DAVIDSON COUNTY *et al. v.* ROGERS *et al.*

(*Nashville,* December Term, 1946.)

Opinion filed January 11, 1947.

328

GOODPASTURE, CARPENTER & DALE, W. M. FUQUA, and HORACE OSMENT, County Attorney, all of Nashville, for appellants.

WALKER & HOOKER and ARMISTEAD, WALLER, DAVIS & LANSDEN, all of Nashville, for appellees.

MR. JUSTICE GAILOR delivered the opinion of the Court.

The bill in this cause was filed by Davidson County the County, to enjoin defendants from operating a stone quarry and stone processing plant on a tract of land owned by the defendants in the 6th Civil District. The prayer for the injunction was supported by the assertion that the operation of a quarry was a violation of a zoning and a number of home owners in the 6th Civil District of regulation passed by the County Court and a nuisance.

In a sworn answer, the defendants assailed the resolution as arbitrary and unreasonable under Art. I, Sec. 8, of the Constitution of Tennessee, and on their motion to dissolve a temporary restraining order and dismiss the bill, the learned Chancellor found, without stating his reasons, that the resolution was "null and void because unreasonable, arbitrary and in violation of Art. I, Sec. 8, of the Constitution of Tennessee." The complainants reserved exceptions and have perfected their appeal to this Court, and the single question presented is whether the zoning resolution for the enforcement of which the bill was filed, was arbitrary and unreasonable and in violation of Art 1, Sec. 8, of the Constitution. If the resolution was valid, the injunction should not have been dissolved.

To consider the question, a short account of the development of zoning in Davidson County is necessary. By Chap. 473 of the Private Acts of 1939, the Legislature passed an enabling Act to authorize and empower the County Court to make regulations for zoning the County outside municipal corporations. The caption of the Act sufficiently sets forth its purpose and scope: "An Act to empower county courts of this State having population of not less than 200,000 and not more than 250,000 according to the Federal Census of 1930 or any subsequent Federal Census; to provide for the establishment of districts or zones within those portions of the counties which lie outside of municipal corporations, and to empower such county courts, by resolution, to regulate, within such zones or districts, the location, height and size of buildings and structures, the percentage of lot occupancy, the required open spaces, and the uses of land, buildings and structures; to provide for the carrying out of such resolutions and penalties for the violations there-

of; to provide for county boards of zoning appeals and the powers and procedures thereof; and authorizing establishment of the position of building commissioner in zoned counties."

By resolution No. 53 of July 1, 1940, the Quarterly County Court accepted this power, set up a Zoning Commission, and provided a comprehensive but incomplete zoning plan for the territory of the County outside municipal corporations lying therein. That part of the County in the 6th Civil District which is here involved, was by resolution No. 53, zoned as "unclassified" in July 1940, but by resolution of April 1945, an amendatory resolution was passed by the Quarterly County Court and the area of 1,250 acres here involved, was rezoned and classified as "Residential C." For the purpose of this opinion, it is sufficient to say that while the area remained zoned as "unclassified", there were some restrictions on use of the property but the operation of a stone quarry and processing plant was not prohibited; that such operation was prohibited when the area was rezoned as "Residential C."

The defendants recognize that the exercise of the police power in furtherance of zoning restrictions has been validated repeatedly by former decisions of this Court, and they do not assail the Act of 1939, nor the general resolution passed in 1940. But they insist that the Resolution of April 1945 was arbitrary, unreasonable and unconstitutional.

Before considering the defendants' contentions, the very limited scope of judicial review must be kept in mind lest this Court in error, substitute its judgment for that of the Legislature. "It is said that the courts have the right to determine whether such law is reasonable. By this expression, however, it is not meant that they have power to pass upon the act with a view to determining

whether it was dictated by a wise or foolish policy, or whether it will ultimately redound to the public good, or whether it is contrary to natural justice and equity. These are considerations solely for the Legislature. In determining whether such act is reasonable the courts decide merely whether it has any real tendency to carry into effect the purposes designed—that is, the protection of the public safety, the public health, or the public morals —and whether that is really the end had in view, and whether the interests of the public generally, as distinguished from those of a particular class, require such interference, and whether the act in question violates any provision of the state or federal Constitution." *Motlow* v. *State*, 125 Tenn. 547, 589, 590, 145 S. W. 177, 188, L. R. A. 1916F, 177.

We have said that when a Quarterly County Court is acting in its legislative capacity in matters political and municipal in character that there will be no judicial review unless the action is clearly unconstitutional. *Donnelly* v. *Fritts*, 159 Tenn. 605, 609, 21 S. W. (2d) 619; *Gamble* v. *Paine*, 141 Tenn. 548, 551, 552, 213 S. W. 419; *County Court of Obion* v. *Marr*, 27 Tenn. 634; *Carey* v. *Justices of Campbell County*, 37 Tenn. 515.

(*3, 4*) We may not say that such legislative action is "unreasonable" when it is taken in pursuance of a spesific enabling Act, as here. *Rutherford* v. *City of Nashville*, 168 Tenn. 499, 508, 79 S. W. (2d) 581. That the passage of a zoning regulation such as the one before us, is a valid exercise of the police power, has long been settled in this State. *Spencer-Sturla Co.* v. *City of Memphis*, 155 Tenn. 70, 290 S. W. 608.

In the case of *Village of Euclid et al.*, v. *Ambler Realty Co.*, 272 U. S. 365, 47 S. Ct. 114, 118, 71 L. Ed. 311, 54 A.

L. R. 1016, which established the same rule for the United States, it was said:

"If the validity of the legislative classification for zoning purposes be *fairly debatable,* the legislative judgment must be allowed to control. *Radice* v. *People of State of New York,* 264 U. S. 292, 294, 44 S. Ct. 325, 68 L. Ed. 690 [694]."

"One who assails classification made in a police measure must carry the burden of showing that it does not rest upon any reasonable basis, but that such classification is essentially arbitrary. *Thomas* v. *State,* 136 Tenn. 47, 188 S. W. 617; *City of Memphis* v. *State ex rel.,* 133 Tenn. 83, 179 S. W. 631, L. R. A. 1916B, 1151, Ann. Cas. 1917C, 1056; *Matlow* v. *State,* 125 Tenn. 547, 145 S. W. 177, L. R. A. 1916F, 177.

"*If any possible reason can be conceived to justify such classification, it will be upheld and deemed reasonable. Peters* v. *O'Brien,* 152 Tenn. 466, 278 S. W. 660; *Hunter* v. *Conner,* 152 Tenn. 258, 277 S. W. 71; *Caldwell & Co.* v. *Lea,* 152 Tenn. 48, 272 S. W. 715; *Bank of Commerce & Trust Co.* v. *Senter,* 149 Tenn. 569, 260 S. W. 144; *Ogilvie* v. *Hailey,* 141 Tenn. 392, 210 S. W. 645." *Darnell* v. *Shapard,* 156 Tenn. 544, 553, 3 S. W. (2d) 661, 663. (Italics ours.)

If the reasonableness of the legislative classification be "fairly debatable", it must be upheld. *Foster* v. *Mayor of City of Beverly,* 315 Mass. 567, 53 N. E. (2d) 693, 151 A. L. R. 737; *Simon* v. *Town of Needham,* 311 Mass. 560, 42 N. E. (2d) 516, 141 A. L. R. 688.

Neither the "motives" of the County Court (*Soukup* v. *Sell,* 171 Tenn. 437, 441, 104 S. W. (2d) 830; *Madison* v. *City of Maryville,* 173 Tenn. 489, 493, 121 S. W. (2d) 540), nor the methods (*Leonard* v. *Haynes,* 82 Tenn. 447;

334

*Donnelly* v. *Fritts*, 159 Tenn. 605, 21 S. W. (2d) 619) are subject to our review.

■ From the foregoing authorities it is clear that the scope of judicial review is very limited. The line of demarcation between the legislation which is "arbitrary" and "confiscatory" and which, therefore, the Courts may strike down, and that legislation which is beyond judicial reach because finally lodged in the legislative power, is hard to draw. Here the Court would be justified in striking down the resolution under attack, only if it was made clear beyond doubt, that the restrictions imposed by the resolution were directed at these defendants and not imposed in the general public interest. The Court, of course, can not indulge in speculation or suspicion, but must determine the question on the evidence as it is presented in this record.

Some facts are clear. After the defendants acquired the land in the fall of 1944, and before the County Court met in January of 1945, a large number of home owners in the general vicinity of defendants property protested to the Zoning Commission and County Court against the installation and operation of a stone quarry on defendants' property. As a result of these protests, both parties were notified that the quarterly County Court would consider the re-zoning of that part of the 6th Civil District in which the defendants' property lies, so that the operation of a commercial stone quarry would be forbidden. At the meeting of the Court in January the defendants were represented by able counsel who assured the Court that the defendants had not commenced the operation of the quarry and further stated that the defendants had not decided definitely to use their property for that purpose. Nevertheless, and although *no operation* by *defendants would be affected by the action,* (giving credit to the

statement of their attorney) the County proceeded in an attempt to prevent the operation of a commercial quarry in the 1,250 acre tract of which the 270 acres of defendants were a part. The Court did this by re-zoning the 1,250 acres from "unclassified" to "agricultural," and since the operation of a commercial quarry was a permissive use under the old "agricultural" classification, by amending the basic or general zoning resolution to exclude the operation of commercial stone quarries from uses permitted in districts zoned as "agricultural." Because one of the Magistrates whose District was affected by the amendment, failed to vote in favor of it, the County Attorney held it void.

In these circumstances, since the Resolution passed at the January term had failed in their major purpose, which was to prevent the operation of commercial stone quarries in the 1250 acre tract of which the defendants owned about one-fourth, the County Court again considered the matter at its April term. The attorney for defendants was present and the Court gave the contentions of all parties a full hearing. The Court then passed a Resolution re-zoning the 1,250 acre tract as "Residential C." The only substantial difference between the "agricultural" and "Residential C" classifications, is that the operation of the quarry is prohibited in the latter and not in the former. It was not until about a year later, and a short time before the original bill was filed on June 27, 1946, that disregarding the Resolution of April, 1945, the defendants installed machinery and commenced the operation of the quarry.

To justify the classification of the 1,250 acres as "Residential C", a number of affidavits of real estate men and others are filed by the complainants. From these, with the accompanying maps, it appears that this "Residential

C'' district lies directly in the path of suburban residential development moving outward from the City of Nashville, and southwestwardly from the Woodbine-Nolensville Pike area. It is traversed by Thompson Lane and Glencliff Road, both of which are two-lane drives upon which expensive residences may reasonably be expected to be constructed. In the immediate vicinity a number of residential subdivisions have already been commenced. Among them are Glencliff Estates Inc., McGlothin Farm and Hidden Acres Subdivision. Numerous residences have been constructed between defendants' property and the Nashville city limits, about 2½ miles away, and there are already about 100 residences surrounding defendants' property. There are many other areas in Davidson County farther away from the Nashville city limits than this tract, which have been zoned in more restriced residential classifications. It appears from uncontradicted evidence that defendants' tract itself, is well suited to residential development and that its value is greatly increased by the residential classification. And finally, the expert real estate men and engineers give it as their considered opinion based on the foregoing facts, that the tract of 1,250 acres zoned ''Residential C'' was so zoned in the public welfare.

An analysis of defendants' brief shows that they assail the resolution of April 1945, on five grounds, namely: (1) Because the area involved was by resolution of the County Court classified as ''agricultural'' in January, 1945, and with no supporting change in circumstances or conditions, reclassified as ''Residential C'' at the next term of Court in April 1945. (2) Because a single area of 1,250 acres, of which the defendants own only 270.26 acres, was arbitrarily lifted out of the 6th Civil District, an ''unclassified'' area, and this was objectionable as being ''piecemeal'' or ''spot'' zoning. (3) Because under

the facts here the public gain or welfare was inconsiderable in comparison with the private loss of the defendants. (4) Because the character of the neighborhood does not justify the classification of "Residential C." (5) The prohibition of quarrying is not a proper subject for zoning restriction.

As to the first, we think it only necessary to say that this is not borne out by the record. The zoning of the tract as "agricultural" in January 1945, would have been complete if the amendment to the blanket resolution had been valid and the defendants so prevented from the operation of a stone quarry in the tract. When by opinion of the County Attorney, the action of the County Court was declared to be void, at its April term the County Court proceeded by another route to effect the purpose which it had had in mind in January. It is not fair, therefore, to say that the zoning of the tract as "agricultural" was ever complete.

Of the second contention that the resolution of April 1945 constituted "piecemeal" or "spot" zoning, it is only necessary that we find the procedure followed by the County Court completely authorized and validated by the enabling Act (sec. 2, Chap. 473, Private Acts 1939), which specifically authorizes zoning of the County partially and by successive plans. This identical contention was made and decided against defendants' contention in *Spencer-Sturla Co.* v. *Memphis, supra; Howe Realty Co.* v. *City of Nashville,* 176 Tenn. 405, 141 S. W. (2d) 904; *McKelly* v. *City of Murfreesboro,* 162 Tenn. 304, 36 S. W. (2d) 99.

We find the third and fourth contentions of defendants equally without merit from the undisputed evidence as we have recited it above. Our conclusion from the undisputed and uncontradicted evidence is that the loss to

the defendants is inconsiderable in comparison with both the present and future gain and welfare of the public, and the undisputed evidence definitely discloses that the defendants' property, as well as the rest of the area of 1,250 acres zoned "Residential C" is reasonably so classified.

■ The fifth contention of defendants is supported by a line of authorities which commenced with a case styled *In re Kelso*, 147 Cal. 609, 82 P. 241, 2 L. R. A., (N. S.) 796, 109 Am. St. Rep. 178. Many of these cases are discussed in the Annotations of 40 A. L. R., p. 788. The statement made by the California Court in a recent case (August 8, 1944), in *Ex Parte Angelus,* 65 Cal. App. (2d) 441, 150 P. (2d), 908, 912, is pertinent here: "The petitioner cites and relies on *In re Kelso.* 147 Cal. 609, 82 P. 241, 2 L. R. A. (N. S.) 796, 109 Am. St. Rep. 178, and *Matter of Application of Throop,* 169 Cal. 93, 145 P. 1029. We think neither case is pertinent because neither case involved a zoning ordinance."

In the Virginia case of *West Bros. Brick Co.* v. *City of Alexandria* 169 Va. 271; 192 S. E. 881, 889, it was said of the Kelso case: "If that case intended to hold that the city cannot forbid the operation of quarries, operated as quarries are ordinarily operated, where people live or are accustomed to move, then it is out of touch with latter day extensions of police power."

■ As to the damages and disadvantages to the neighborhood, caused by the operation of the commercial quarry which on defendants' own statement, will be a large and extensive operation involving even at the outset, the removal of many tons of stone and giving defendants a profit of $600 a day. The defendants insist that there will be no damage to neighboring property owners and the general public. The evidence introduced by com-

plainants is to the contrary. The question is on the evidence, at least, "fairly debatable", and being so, it was for the County Court to decide and is not for our review. *Village of Euclid et al. v. Ambler Realty Co.*, and other cases cited, *supra.*

From the undisputed proof it appears that of the 1,250 acres zoned "Residential C" by the Resolution of April 1945, the defendants own less than one-fourth; none of the other property owners in the area have protested; the defendants at the time of the passage of the Resolution had not commenced the operation of a quarry, nor declared their intention to do so, they did not commence the operation until a year after the Resolution had become law; the area zoned is suitable for residential development and the natural future growth and development of the suburban district makes that development entirely probable. We find the effect of the Resolution is for the general welfare and we cannot find that the Resolution assailed is arbitrary or unconstitutional.

The decree of the Chancellor is reversed and the permanent injunction granted as prayed. The defendants will pay the costs.