Town of Caledonia, Respondent, vs. Racine Limestone Company, Inc., Appellant.

*March 5—April 6, 1954.*

476

For the appellant there were briefs by *Flynn & Greenquist* of Racine, and oral argument by *Kenneth L. Greenquist*.

For the respondent there was a brief by *Brach & Edwards* of Racine, and oral argument by *Oscar M. Edwards*.

A brief was filed by *Willink & Thompson* of Madison, for the Wisconsin Farm Bureau Federation Co-operative as *amicus curiae*.

BROADFOOT, J. Upon this appeal the town contends that the ordinance is a valid regulatory measure enacted by the town board under its police powers. The defendant, on the other hand, contends that it is an attempt by the town to amend the county zoning ordinance; that it is a prohibitory measure; that it is void for lack of certainty as to what acts are prohibited; that it is inapplicable to an existing quarry; and that it is invalid in that it creates an unlawful classification.

An owner's right in property extends not only downward under the surface to an unlimited extent but also upward, but all private property is held subject to a reasonable exercise of the police power. *Piper v. Ekern,* 180 Wis. 586, 194 N. W. 159. Stated in another way, the privilege of every citizen to use his property according to his own wishes and in a manner that will yield him the best economic return is a property right. This property right should be invaded only when it is necessary to secure the common welfare. It is often difficult to determine whether the invasion of property rights is necessary for the public good, or whether it is unreasonable or confiscatory. An ordinance restricting the use of property beyond what is necessary to provide for the welfare and general security of the public is not a valid exercise of the police power. The rights of the public must be weighed against the rights of the individual. If the gain to the public by the ordinance is small when compared with the hardship imposed upon the individual property owner by the restrictions of the ordinance, no valid basis for the exercise of the police power exists. In weighing the respective rights certain rules

have been formulated. One of the principles is that all persons are entitled to equal protection of the law, and any ordinance limiting or restricting the right of a person to engage in a legitimate business must apply equally to all persons engaged in a like business where circumstances and conditions are similar, and that classifications of persons to be regulated must be reasonable and substantial. In *State ex rel. Ford Hopkins Co. v. Mayor,* 226 Wis. 215, 222, 276 N. W. 311, this court said:

"(1) All classification must be based upon substantial distinctions which make one class really different from another.

"(2) The classification adopted must be germane to the purpose of the law.

"(3) The classification must not be based upon existing circumstances only.

"(4) To whatever class a law may apply, it must apply equally to each member thereof.

" . . .

" '(5) That the characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.' "

The record discloses that there is and has been in operation in an industrial area within said town a large commercial rock quarry. The ordinance does not apply to said quarry, nor does it apply to the operation of sand pits, gravel pits, clay beds, or to the recovery and sale of any other mineral. In determining the reasonableness of a proposed regulation under the police power, the object to be attained is to be given consideration. The test to be applied by the town board in making its determination is whether the operation will be "conducive to the health, safety, welfare, and convenience of the public."

The validity of an ordinance allegedly adopted as a regulation under the police power depends on whether, under all of

the facts and circumstances, the ordinance is really designed to accomplish a purpose properly falling within the scope of the police power. The record before us is a meager one. The plaintiff suggests that we may take judicial notice of certain alleged evils connected with the quarrying of rock. It is claimed that blasting with explosives is a necessary part of the operation with resultant noise and earth tremors which would damage surrounding residences and buildings. The record does not disclose the number or kind of buildings within the vicinity, nor their proximity to the quarry. Nor does the record disclose the same information as to the quarry in the industrial area. If we were to take judicial notice of the proximity of the buildings, it would be necessary for us to assume that there would be more buildings and that they would be in closer proximity to a quarry in an industrial area than in an agricultural area, and that the danger to buildings in an industrial area might be greater. Indeed, the question of lateral support of buildings of heavy construction adjacent to the quarry might become pertinent.

The plaintiff then contends that the operation of a quarry necessarily brings into existence a concentration of heavy and noisy machinery, trucks and the like. If this is a traffic measure, then the concentration of traffic is probably greater in an industrial area than in an agricultural area.

It is also contended that when quarrying operations are over a quarry is abandoned, leaving an excavation useless for any purpose except a public dump; that the same would be unsightly, and might be dangerous to children. These objections would seem to apply with equal force to a quarry in an industrial area and to an operation in an agricultural area concerned with the recovery of sand, gravel, clay, or minerals, particularly so when it appears that the Bradley farm is adjacent to the public dumping grounds of the plaintiff and to a quarry belonging to it.

It is difficult to see that this is a regulatory measure. Upon consideration of an application the town board can do one of two things. It can prohibit the operation of a quarry or it can grant a permit for said operation. If a permit is granted, then the applicant is permitted to proceed without limitation as to time and without any regulation as to the size or method of his activities. The classification is not based upon substantial distinctions which make operations of stone quarries in an agricultural district really different from other mining operations within the agricultural district, nor from those in an industrial district. The purpose of the law is obscured and it is difficult to see that the classification adopted is germane to the purpose.

Our attention has been called to prior decisions of this court wherein ordinances regulating junk dealers, rendering plants, and other businesses not nuisances *per se* have been upheld. In those cases the test applied was whether the standards set up by the ordinance were sufficient. These dealt with the operation of businesses within a city. Density of population has always been considered in passing upon the reasonableness of a regulatory measure, and it should be pointed out that the municipalities were dealing with businesses of a transitory nature. In other words, a junk yard can be moved to an area less densely populated without expense that is disproportionate to the public good. Minerals, on the other hand, must be extracted from the location where they were placed by nature. To unduly restrict their recovery is more apt to result in a confiscation of a property right.

It is difficult to formulate rules applicable to all situations. A regulation may be valid as applied to one kind of business, but it may be invalid when applied to another business because its effect on the public is different. As stated above, each case depends upon its own particular facts and circumstances.

We hold that the ordinance is void because the classification made therein is improper. This determination makes it unnecessary to decide the other issues that were raised.

*By the Court.*—Judgment reversed. Cause remanded with directions to dismiss the plaintiff's complaint.

MARTIN, J. (*concurring*). While I agree with the majority of the court in holding the ordinance void for the reasons set forth in the opinion filed, I would hold it void also because it fails to set up any standards by which the committee or board is to be guided. The cases applying to junk yards, rendering plants, etc., in which ordinances such as the one in question here have been held valid, are easily distinguished from this case where the ordinance refers to stone quarries.

In *Juneau v. Badger Co-operative Oil Co.* .(1938), 227 Wis. 620, 628, 279 N. W. 666, it was held, quoting from *Lux v. Milwaukee Mechanics Ins. Co.* (1929), 322 Mo. 342, 346, 15 S. W. (2d) 343, 345:

"The general rule is that any ordinance which attempts to clothe an administrative officer with arbitrary discretion without a definite standard or rule for his guidance, is an unwarranted attempt to delegate legislative functions to such officer and for that reason is unconstitutional. [*Hays v. Poplar Bluff,* 263 Mo. 516; *Ex parte Cavanaugh,* 313 Mo. 1. c. 381; *City of Shreveport v. Herndon,* 105 So. 244, and numerous cases cited; *People v. Sholem,* 294 Ill. 204, 128 N. E. 377.] . . .

"The exceptions to the general rule are in situations and circumstances where necessity would require the vesting of discretion in the officer charged with the enforcement of an ordinance, as where it would be either impracticable or impossible to fix a definite rule or standard, or where the discretion vested in the officer related to the enforcement of a police regulation requiring prompt exercise of judgment."

CURRIE, J. (*dissenting*). The majority opinion invalidates the ordinance on the ground of discriminatory classification. In those cases where a statute or ordinance is attacked on the ground of discriminatory classification it is the duty of the court to uphold the constitutionality of the enactment if there is any conceivable basis for so doing. 16 C. J. S., Constitutional Law, p. 282, sec. 100 c., states the generally acknowledged rule to such effect as follows:

"It will be presumed that a statutory classification effecting a difference in treatment between different subjects or classes is not invalid as unreasonable or discriminatory, and that in so classifying, the legislature acted from a proper motive, with full knowledge of existing conditions. So, *it will be presumed that the legislature acted advisedly, in response to a reasonable basis for classification, and that its differentiation between subjects is based on adequate grounds, if any such basis can reasonably be said to exist.*" (Emphasis supplied.)

It appears from one of the affidavits before the trial court that the town of Caledonia is developing into a residential area and that already portions of the town have been platted into lots for homes, the number of lots so platted being from 500 to 1,000. Because of the nearness of the town to Racine, (a city of 71,193 population according to the 1950 census), there is every likelihood that the course of development of the town into a residential area will continue in keeping with this trend all over the nation of more and more people who work in cities making their homes in the near-by rural areas. It would seem reasonable to assume that the purpose of the ordinance was not to prohibit stone quarries generally throughout the town, but only in those locations in such close proximity to homes as would adversely affect the *health, comfort, and quiet* of the people residing therein.

Under the authorities there can be no question of the right of the town to exercise its police power to achieve such ob-

jective. 16 C. J. S., Constitutional Law, p. 543, sec. 175 b. As early as 1904 the United States supreme court in *Fischer v. St. Louis* (1904), 194 U. S. 361, 370, 24 Sup. Ct. 673, 48 L. Ed. 1018, in upholding an ordinance of the city of St. Louis requiring the obtaining of a permit to maintain a cow or dairy stable within the city limits, declared:

"The power of the legislature to authorize its municipalities to regulate and suppress all such places or occupations as in its judgment are likely to be injurious to the health of its inhabitants *or to disturb people living in the immediate neighborhood by loud noises or offensive odors,* is so clearly within the police power as to be no longer open to question." (Emphasis supplied.)

*Fischer v. St. Louis, supra,* has been cited many times in support of the principle above quoted. The United States court of appeals for the Sixth circuit quoted with approval this same extract from the opinion in the *Fischer Case* in its recent decision in *Tower Realty, Inc., v. East Detroit* (1952), 196 Fed. (2d) 710.

In *Fred v. Borough of Old Tappan* (1952), 10 N. J. 515, 524, 92 Atl. (2d) 473, 477, the supreme court of New Jersey had before it the validity of an ordinance which prohibited a landowner from excavating or moving soil for sale or use, except in connection with construction on the premises, without first obtaining permission from the municipal authorities to do so. In the opinion sustaining the validity of the ordinance Mr. Chief Justice VANDERBILT declared:

" 'Avowedly, the ordinance was enacted in the exercise of the police power. Every citizen holds his property subject to the proper exercise of this power, either by the legislature directly or by public or municipal corporations to which the legislature may delegate it. It is well settled that laws and regulations of this character, relating to the *comfort, health, convenience, good order, and general welfare of the inhabitants,* though they may disturb the enjoyment of individual

rights, are not unconstitutional, though no provision is made for compensation for such disturbances. They do not appropriate private property for public use, but simply regulate its use and enjoyment by the owner. If he suffers injury, it is either *damnum absque injuria*, or, in theory of the law, he is compensated for it by his sharing the general benefits which the regulations are intended and calculated to secure.' " (Emphasis supplied.)

The Minnesota supreme court in *Meyers v. Minneapolis* (1923), 154 Minn. 238, 191 N. W. 609, held that a municipal ordinance of the defendant city requiring a permit as a condition to operating a stone quarry to be a valid exercise of police power under the general-welfare clause of the city charter.

In the case of *Davidson County v. Rogers* (1947), 184 Tenn. 327, 198 S. W. (2d) 812, the plaintiff county in which the city of Nashville is located, rezoned 1,250 acres of land from an "agricultural" zone to a "residential C" zone. Quarries were prohibited in residential C zones. The defendants had acquired 270 acres of the 1,250 acres for the purpose of operating a stone quarry, such land being two and one-half miles from the city limits of Nashville. The defendants attacked the validity of such change in the zoning ordinance because it prohibited them from operating their quarry as to which they estimated their profits would amount to $600 per day. The Tennessee supreme court upheld the validity of the resolution by which the change in zoning was made even though it meant absolute prohibition of the use of defendants' lands for quarry purposes. In its opinion the court stated (184 Tenn. 339, 198 S. W. (2d) 817):

". . . the area zoned is suitable for residential development and the natural future growth and development of the suburban district makes that development entirely probable. We find the effect of the resolution is for the general welfare and we cannot find that the resolution assailed is arbitrary or unconstitutional."

One of the grounds advanced by the majority opinion for the determination, that the ordinance is void because of a discriminatory classification, is because the requirement of a permit to operate a quarry is made applicable to the part of the town zoned as an agricultural district and not to the part zoned as an industrial district. This zoning was accomplished by the county zoning ordinance (not the town ordinance before us on this appeal) and the defendant corporation does not contend that there was any illegal classification with respect to the manner in which the town was zoned as to industrial and agricultural areas. One of the chief objectives sought to be effected by a zoning ordinance in setting up an industrial district is to confine industries which emit noise, dust, or odors to a restricted area so as to protect the health, comfort, and quiet of people residing in nonindustrial areas and promote the orderly development of the same as desirable residential districts.

The rock formation underlying the agricultural lands of the town of Caledonia is limestone. It is a matter of common knowledge that the quarrying of limestone is a particularly dusty occupation. Because of the necessary use of heavy machinery and blasting it is therefore also a very noisy one. These two characteristics of dust and noise are sufficient in themselves to justify the classification of the ordinance requiring the obtaining of a permit in the agricultural districts of the town in which there are homes in which people live and in which the number of homes is likely to rapidly increase, and in not requiring the same in the industrial zone.

The majority opinion declares that the endangering of safety to life or property due to blasting, the congestion of traffic, or the possibility of a quarry being abandoned so as to be unsightly or dangerous to children, or being used as a public dump, are equally or more objectionable in an industrial area than in an agricultural area where people reside. Wheth-

er a public dump, or abandoned-quarry holes, are as objectionable in an industrial area as in a fairly thickly populated agricultural district where people have their homes is debatable. It may be conceded that the physical danger to persons and property, and traffic congestion, would be as great, if not greater, in an industrial area than in a residential area. However, this does not establish that the ordinance is invalid for unreasonable classification inasmuch as the noise and dust of quarrying is clearly more objectionable in a district devoted to private homes than in an industrial area.

If an effort is made to sustain a classification made under the police power and reasons A, B, C, and D are advanced for sustaining the same, and the court is of the opinion that reasons A and B justify the classification, but reasons C and D do not, this does not invalidate the classification as discriminatory. The rule is that if there is any reasonable basis for the classification the same must be sustained, and reasons A and B provide such reasonable basis. It is immaterial that reasons C and D do not.

The second ground advanced by the majority opinion for holding that there has been a discriminatory classification is because a permit is not required for operating a sand, gravel, or clay pit or mine, which industries are considered by the majority to be kindred to that of quarrying rock. In the first place, the record is entirely silent as to there being any excavating of sand, gravel, clay, or other minerals on a commercial basis now being conducted in the town of Caledonia; or even of the same being threatened or contemplated. Secondly, there is no showing that there are any deposits of sand, gravel, clay, or minerals in the town of a nature or quantity that would make their removal a feasible commercial enterprise. On the other hand, the acts of the defendant in attempting to quarry limestone did pose an immediate threat to the comfort, health, and quiet of the people residing

in the area which called for the exercise of the town's police powers.

In *Turner v. New Bern* (1924), 187 N. C. 541, 122 S. E. 469, the North Carolina court upheld the validity of a municipal ordinance enacted under the city's police powers prohibiting lumberyards and wharves in a certain described residential district in the city. In its opinion the court stated (187 N. C. 547, 122 S. E. 472):

"A statute enacted within the police power will not be adjudged invalid because an omitted subject or locality might have been properly included. *People v. Schweinler Press,* 214 N. Y. 395 [108 N. E. 639; L. R. A. 1918A, 1124 Ann. Cas. 1916D, 1059]; *In re Smith,* 143 Cal. 370 [77 Pac. 180]."

Mr. Chief Justice HUGHES in *West Coast Hotel Co. v. Parrish* (1937), 300 U. S. 379, 400, 57 Sup. Ct. 578, 81 L. Ed. 703, 108 A. L. R. 1330, declared:

"This court had frequently held that the legislative authority, acting within its proper field, is not bound to extend its regulation to all cases which it might possibly reach. The legislature 'is free to recognize degrees of harm and it may confine its restrictions to those classes of cases where the need is deemed to be clearest.' If 'the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied.' "

The New Jersey supreme court in *Amodio v. Board of Commissioners* (1945), 133 N. J. L. 220, 226, 43 Atl. (2d) 889, 893, had before it a town ordinance regulating the hours of barbershops and it was claimed that the same was discriminatory because not made applicable to beauty shops. The court upheld the validity of the ordinance and stated:

". . . unless there is an utter lack of basis for the classification, the action taken is not discriminatory in the constitutional sense. There is no invidious discrimination merely because the evil may in some degree extend to other occupa-

tions. The question of the relative need is essentially one for the legislative judgment."

The concurring opinion of Mr. Justice MARTIN, holds that the ordinance is invalid on the ground that insufficient standards are set forth to guide the town board in granting or refusing permits. I believe this issue to be a much closer one than that of discriminatory classification. However, under the precedents of *Lerner v. Delavan* (1930), 203 Wis. 32, 233 N. W. 608, and *La Crosse Rendering Works v. La Crosse* (1939), 231 Wis. 438, 285 N. W. 393, 124 A. L. R. 511, the standards set forth in the ordinance in the instant case are fully as definite as those in the ordinances before the court in these two cases, the validity of which were upheld.

In *Lerner v. Delavan, supra,* the ordinance required a permit from the common council in order to operate a junk yard. The only standards stated in the ordinance consisted of the information which was required to be set forth by the applicant in the application, which information was no more detailed than that required in the application in the instant case. The ordinance in the *La Crosse Rendering Works Case* required a permit from the common council in order to maintain a rendering plant. No standards were expressly set forth in the ordinance and the same could only be inferred from such facts as that rendering plants were required to provide certain sewage-disposal facilities, were prohibited from conducting rendering operations between April 1st and November 1st of each year, and were also required between those two dates to spray those carcasses on hand awaiting rendering with a coal-tar disinfectant and deodorizer. These specific requirements would seem to apply to the conduct of the business after the permit was granted, and not to set up standards for the guidance of the counsel in issuing or denying a permit in the first instance. On the other hand, the ordinance before us in the case at bar required that a public

hearing be held on the application and that a specific finding be made by the town board "whether the operation of a quarry on the premises described in the application will be conducive to the health, safety, welfare, and convenience of the public of the town of Caledonia and shall grant or deny a permit to the application in accordance with such determination."

The fact that rendering plants and junk yards are businesses which can be operated in various locations, while a stone quarry can be located only where there is rock to be quarried, does not affect the question of whether an ordinance sets forth sufficient standards to guide the municipal authorities in refusing or granting permits. This difference, however, may have a bearing upon the reasonableness of a denial of a permit to operate a quarry, or whether it is constitutional to prohibit a landowner from quarrying rock on his own premises.

The majority opinion alludes briefly to this question of whether the police powers of a municipality ever would permit absolute prohibition of a quarry, as distinguished from a regulatory measure prescribing the manner in which quarrying operations should be carried on, but does not pass upon such issue. Under the decisions of *Hadacheck v. Los Angeles* (1915), 239 U. S. 394, 36 Sup. Ct. 143, 60 L. Ed. 348; *Meyers v. Minneapolis, supra; Post Brick Co. v. Thompson* (1939), 68 N. Y. Supp. (2d) 159; and *Davidson County v. Rogers, supra,* I have no doubt that the prohibition of a stone quarry being operated in a residential district in a city would be held valid, although *In re Kelso* (1905), 147 Cal. 609, 82 Pac. 241, is contra. Today courts have a greater tendency to uphold the exercise of the police power in prohibiting businesses and occupations, which adversely affect the health, comfort, and quiet of people residing in the near vicinity, than they did back in 1905 when *In re*

*Kelso, supra,* was decided. The Virginia court in the case of *West Brothers Brick Co. v. Alexandria* (1937), 169 Va. 271, 290, 192 S. E. 881, 889, speaking of the *Kelso Case* stated:

"If that case intended to hold that the city cannot forbid the operation of quarries, operated as quarries are ordinarily operated, where people live or are accustomed to move, then it is out of touch with latter-day extensions of police power."

The Tennessee court in *Davidson County v. Rogers, supra,* also expressly refused to follow the *Kelso Case* as a precedent.

On the other hand, it is doubtful if any court would consider valid, as a reasonable exercise of the police power, an enactment which prohibited a quarry being operated in a sparsely settled rural area.

In the instant case we have an ordinance which contemplates that a permit to operate a quarry will be refused to an applicant for the same if the location is so close to residences as to adversely affect the health, comfort, or quiet of the occupants. The town of Caledonia presents neither an urban residence district, nor a sparsely settled rural region, but a suburban area which is partly agricultural and partly residential. In such a situation a test of validity which might well be employed would be that of balancing the equities of the respective parties, *i. e.,* the landowner who desires to quarry rock from his own land and the people residing in the neighborhood who will be adversely affected thereby. If the particular piece of land involved is only suitable for the operation of a quarry it would constitute a virtual confiscation of the value of such property to deny its use for such purpose; but, on the other hand, if the land is suitable for agricultural purposes the equities of the neighbors who would be adversely affected by quarrying operations might well be held to outweigh those of the landowner.

In *Matter of Calcagno v. Webster* (1943), 265 App. Div. 687, 689, 41 N. Y. Supp. (2d) 140, 142 (affirmed without opinion, 291 N. Y. 701, 52 N. E. (2d) 592), the refusal of a zoning board of appeals to grant a variance to permit the operation of a commercial gravel pit on premises located within an agricultural-residence zone was sustained on the ground that the record did not disclose that the land in question could not yield a reasonable return if used for either agricultural or residence purposes. The court in its opinion stated:

"The mere fact that the petitioners' land contains deposits of sand and gravel and that the board of appeals has refused to grant them a permit to operate a commercial gravel pit does not in itself unlawfully deprive them of their property. The petitioners, in order to become entitled to a variance, must show factors sufficient to constitute such a hardship as would in effect deprive them of their property without compensation. (*Arverne Bay Construction Co. v. Thatcher*, 278 N. Y. 222, 226, 227.) [15 N. E. (2d) 587, 117 A. L. R. 1110.] Restrictions within reasonable limits upon the use of property for the common good have been consistently recognized as valid, although it has been held that when the regulation goes too far it will be recognized as a taking."

In summary, I would hold the instant ordinance to be a valid exercise of the police powers vested by the legislature in the town board. This would not mean that the defendant corporation would be without an adequate remedy if the town board would capriciously or arbitrarily deny it a permit without making an adequate finding based on facts that the operation of a quarry on the premises covered by the application would not be "conducive to the health, safety, welfare, and convenience" of the people of the town. Facts necessary to sustain such a finding should establish (1) that the operation of a quarry on defendant's land is so close to dwelling houses of neighbors as would adversely affect the health, com-

fort, or quiet of the occupants; and (2) that defendant's lands are suitable for agricultural or residence purposes so that the denial of a permit will not amount to a confiscation of the value of defendant's premises.