IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 7, 2013 Session

## CITIZENS FOR SAFETY AND CLEAN AIR, WALT WARREN, PATRICIA WARREN, CHARLES GOINS AND JUDY GOINS v. CITY OF CLINTON, TENNESSEE, CLINTON MUNICIPAL PLANNING COMMISSION, AND ROGERS GROUP, INC.

Appeal from the Chancery Court for Anderson County
No. 07CH7499      William E. Lantrip, Chancellor

No. E2012-02435-COA-R3-CV-FILED-OCTOBER 11, 2013

This appeal arises from a dispute over the zoning of a certain tract of land in Clinton, Tennessee. Clinton annexed property ("the Property") belonging to Rogers Group, Inc., and assigned zoning classifications to the newly annexed tract. The group Citizens for Safety and Clean Air, and individual local residents Walt Warren, Patricia Warren, Charles Goins, and Judy Goins ("the Plaintiffs,"collectively)[1] sued the City of Clinton, Tennessee, Clinton Municipal Planning Commission, and Rogers Group ("the Defendants," collectively) in the Chancery Court for Anderson County ("the Trial Court") seeking declaratory judgment. The Plaintiffs, opposed to the prospective development of a quarry and asphalt plant on the Property, challenged the heavy industrial zoning classification of a portion of the Property on the basis that it was arbitrary and capricious; constituted illegal contract zoning; and, constituted illegal spot zoning. Alternatively, the Plaintiffs sought to enforce the Master Settlement Agreement ("the MSA"), an agreement settling an annexation dispute entered into by Anderson County, Clinton, and Rogers Group. The Plaintiffs alleged they were third-party beneficiaries to the MSA. The Trial Court found in favor of the Defendants on all issues. We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

---

[1]Steve and Vicki Russell, parties to the original suit, are not now parties on appeal.

Gary A. Davis and James S. Whitlock, Asheville, North Carolina, for the appellants, Citizens for Safety and Clean Air, Walt Warren, Patricia Warren, Charles Goins, and Judy Goins.

John T. Batson, Knoxville, Tennessee, for the appellees, City of Clinton, Tennessee and Clinton Municipal Planning Commission.

Bruce D. Fox, Clinton, Tennessee; and, H. Wayne Phears, Atlanta, Georgia, for the appellee, Rogers Group, Inc.

## OPINION

### Background

The Property, owned by Rogers Group, has had a long and contentious history filled with zoning disputes. Located in Clinton, Tennessee, the Property consists of approximately 100 acres. The local community is called Bethel. The Property, which contains a large stone deposit, lies near the intersection of Interstate 75 and Highway 61. There is a large open pit on the Property from previous mining on the site. A number of local residents oppose the development of a quarry and asphalt plant on the Property. There is much dispute in this case as to the precise character of the area. Generally, the land south and east of the Property is residential and agricultural in nature. To the north of the Property lies land used for commercial purposes. In the wider vicinity of the Property is a Wal-Mart, Fox Toyota, and industrial parks.

Several years ago, Clinton proposed to annex the Property. Anderson County objected. A legal challenge to the annexation commenced. Rogers Group, Anderson County, and Clinton, major stakeholders in the annexation dispute, participated in mediation to resolve the annexation and other matters among the parties to the MSA. The MSA resulted from this process. Under the MSA, among other provisions, certain minimum conditions were required to be satisfied if the Property were rezoned to allow for a quarry. However, the final decision as to how the Property was to be zoned remained with Clinton. The MSA was ratified. Anderson County dropped its objection to Clinton's annexation of the disputed tract, and the various lawsuits were dismissed.

The Property finally was annexed by Clinton in December 2006. The Clinton Regional Planning Commission advised B-4 zoning for 300 feet of the Property along Highway 61, and M-2 heavy industrial zoning for the rest of the Property. In August 2007, a hearing was held before the Clinton City Council during which numerous concerned people had their say regarding the proposed zoning. A record of the public hearing reflects that the Council debated the zoning classifications. Subsequently, the Clinton City Council voted to

adopt the zoning ordinance on a second and final reading. The Property was zoned B-4, in part, and M-2 heavy industrial, in part. The latter classification is the basis for the present controversy.

The Plaintiffs, a non-profit corporation and concerned local citizens, opposed the proposed development of a quarry and asphalt plant on the Property. In September 2007, the Plaintiffs sued the Defendants in the Trial Court. The Plaintiffs challenged the heavy industrial zoning classification of a portion of the Property on the basis that it was arbitrary and capricious; constituted illegal contract zoning; and, constituted illegal spot zoning. Alternatively, the Plaintiffs sought to enforce the MSA as they alleged that they were third-party beneficiaries to this agreement.

This case was tried on May 30 and 31, June 1, and July 10 and 11, 2012. A legion of witnesses testified. We will summarize the evidence only as relevant to the issues on appeal. Many of the Plaintiffs' witnesses testified to their opposition to a quarry and asphalt plant being constructed on the Property. Also, certain witnesses testified to what they regarded as disruptive activity carried on at other sites run by Rogers Group. In addition, planning experts testified regarding factors that would have been reasonable for Clinton to consider in zoning the Property, some of which were: the size and physical characteristics, its location next to major transportation arteries, the need for materials produced by such a site, and the site's economic viability. Witnesses testified to the possible noise and nuisance factors potentially associated with the operation of a quarry and asphalt plant on the Property. However, as we later will explain, this question concerning specifically the operation of a quarry and asphalt plant on the Property is not dispositive to our resolution of this appeal.

In October 2012, the Trial Court entered final judgment in favor of the Defendants. The Trial Court incorporated its previously issued findings of fact and conclusions of law, which we reproduce in part:

> The property is especially suitable as a quarry because of its size, location with respect to Interstate 75 and Highway 61, the existing pit from prior quarry activity, and rock throughout the site near the surface at shallow depths making it economically and commercially feasible to mine. Both planning experts who testified for the parties were in substantial agreement with respect to factors which it would be reasonable for Clinton to consider in zoning the property. These factors included:
>
> (A) location of the property at the intersection of Highway 61 and Interstate 75;

(B) the presence of industrial and commercial zoning in the area both East and West of Interstate 75;
(C) the size of the parcel and its physical characteristics including the large pit from prior quarry activity;
(D) suitability for other uses;
(E) the need for materials produced at the site;
(F) the resulting reduction of truck traffic through the City to deliver product purchased by the City from other sites including the increased costs paid by the City;
(G) the desire of the City to control any quarry operated at this site;
(H) the economically viable use of this property considering the limitation on extension of infrastructure on this site.

There exists within the City of Clinton no sound or noise ordinance establishing any noise limits or restrictions.

\*\*\*

While there were concerns and objections made during this trial from citizens residing in the community and similar comments and concerns were expressed to the Clinton City Council and Planning Commission, it remains the right and authority of the City to consider and weigh the concerns and whether or not they wanted to make the zoning classification. As the Court of Appeals noted in Carter v. Adams 928 S.W.2d 39 "the local zoning authority knows the area and parties best and determined that the need for a new landfill in the area outweighed other factors at issue." It would be improper and unlawful for me to substitute my judgment for that of the Clinton City Council.

Because the Court is of the opinion that the reasons set forth in the Findings of Fact are fairly debatable the Court is precluded from substituting my judgment for that of the Clinton City Council. The decision to rezone the property M-2 is upheld.

\*\*\*

There was in this instance no bilateral negotiation between Clinton and Rogers resulting in an agreement to rezone the property M-2. Here the MSA explicitly leaves the zoning classification to Clinton and only sets minimum conditions if industrial zoning is granted. It does not limit Clinton's power to decide the

appropriate zoning classifications and conditions. Clinton retained and exercises its discretion and authority to act in behalf of the public. The Court concludes that Clinton was free to impose whatever zoning classification it chose, and that there was no bilateral agreement to zone the Rogers property M-2. The Court therefore denies plaintiffs claim of illegal [contract] zoning.

\*\*\*

Clinton had a rational basis to rezone this tract M-2 even if the Court would have concluded that there was no other criteria to justify this zoning classification. The Court therefore concludes that the plaintiffs' complaint alleging illegal spot zoning must fail.

(Format modified). The Trial Court also issued supplemental findings of fact and conclusions of law with respect to the issue of third-party beneficiaries, stating in part:

The residents whose property was located near Rogers tract were clearly considered by Anderson County during negotiations with Rogers Group representatives and the City of Clinton. Anderson County sought restrictions on Rogers operations as discussed in the Courts previous findings. These restrictions would benefit the members of the Bethel Community including Plaintiffs and many other citizens of the county. The Plaintiffs are not parties to the [MSA] nor did they participate in any negotiations. There was no testimony in the record presented by any witness that any of the Plaintiffs were considered to be or intended to be beneficiaries of the Agreement. The Plaintiffs opposed approval of the [MSA]. No witness of the parties to the [MSA] testified that they intended for any of the Plaintiffs to be beneficiaries of the contract and to be able to enforce the provisions of the [MSA]. The [MSA] by its express terms is binding only upon the parties, their successors or assigns. There exists no mention in the agreement that any rights of enforcement exist for any third party. Section 61 of the [MSA] expressly restricts assignment unless there is written consent.

\*\*\*

There was an absence of proof that the parties to the [MSA] ever intended that a vaguely defined and large group of citizens including the Plaintiffs were ever intended to be third party beneficiaries. Plaintiffs were required to show specific intent to grant individual citizens individual enforceable rights.

Plaintiffs failed to carry their burden of proof and the Court finds that they are not third party beneficiaries of the [MSA] entitled to enforce its terms.

(Format modified). The Plaintiffs timely appealed to this Court.

## **Discussion**

Though not stated exactly as such, the Plaintiffs raise four issues on appeal: 1) whether the Trial Court erred in finding that the zoning of the Property was not arbitrary or capricious; 2) whether the Trial Court erred in finding that the MSA did not constitute illegal contract zoning; 3) whether the Trial Court erred in finding that the zoning of the Property did not constitute illegal spot zoning; and, 4) whether the Trial Court erred in finding that the Plaintiffs are not third-party beneficiaries of the MSA.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address whether the Trial Court erred in finding that the zoning of the Property was not arbitrary or capricious. Our Supreme Court has stated:

When a municipal governing body acts under its delegated police powers either to adopt or amend a zoning ordinance, it acts in a legislative capacity and the scope of judicial review of such action is quite restricted. *Davidson County v. Rogers*, 184 Tenn. 327, 198 S.W.2d 812 (1947); *Mobile Home City of Chattanooga v. Hamilton County, supra*; *Barret v. Shelby County*, Tenn.App., 619 S.W.2d 390 (1981).

"Legislative classification in a zoning law, ordinance or resolution is valid if any possible reason can be conceived to justify it." *State ex rel. SCA Chemical Waste Services, Inc. v. Konigsberg,* Tenn*.,* 636 S.W.2d 430, 437 (1982).

The restricted role of the courts in reviewing the validity of a zoning ordinance or regulation has been aptly stated as follows:

-6-

"Zoning is a legislative matter, and, as a general proposition, the exercise of the zoning power should not be subjected to judicial interference unless clearly necessary. In enacting or amending zoning legislation, the local authorities are vested with broad discretion and, in cases where the validity of a zoning ordinance is fairly debatable, the court cannot substitute its judgment for that of the legislative authority. If there is a rational or justifiable basis for the enactment and it does not violate any state statute or positive constitutional guaranty, the wisdom of the zoning regulation is a matter exclusively for legislative determination.

"In accordance with these principles, it has been stated that the courts should not interfere with the exercise of the zoning power and hold a zoning enactment invalid, unless the enactment, in whole or in relation to any particular property, is shown to be clearly arbitrary, capricious, or unreasonable, having no substantial relation to the public health, safety, or welfare, or is plainly contrary to the zoning laws." 82 Am.Jur.2d *Zoning and Planning* § 338 (1976) at 913–14.

*Fallin v. Knox County Bd. of Comm'rs*, 656 S.W.2d 338, 342-43 (Tenn. 1983). Given this standard, "[o]ur review of such legislative action is very limited." *Fielding v. Metro. Gov't of Lynchburg, Moore County*, No. M2011-00417-COA-R3-CV, 2012 WL 327908, at *2 (Tenn. Ct. App. Jan. 31, 2012), *no appl. perm. appeal filed*.

The Plaintiffs contend that, should the Trial Court be upheld, the residents in the vicinity of the Property would be detrimentally impacted by the operation of a quarry and asphalt plant in their community. They argue that such an operation would violate the applicable local law. Under Clinton Zoning Ordinance §14-609 (3), the relevant subsection for this appeal, the following uses are allowed under the M-2 heavy industrial zoning classification: "Any industry which does not cause injurious or obnoxious noise, odors, fire hazards, or other objectionable conditions as determined by the building official. Slaughterhouses, sawmill uses, and jails shall automatically be considered as non-allowed uses."

The Plaintiffs argue that the proposed quarry and asphalt plant would run afoul of this provision. Much testimony was introduced at trial concerning the alleged infractions of Rogers Group operations elsewhere. This case, however, is not about whether the proposed Rogers Group quarry and asphalt plant is a permitted use under the zoning

-7-

ordinance and classification. This case, as reflected in the issues raised by the Plaintiffs on appeal, is about the zoning of the Property and not about a particular possible future use of the property. As outlined above, the standard for judicial review of this type of legislation action is quite limited.

With this deferential standard as our guide, we look to the Property and the reasoning that could support Clinton's move to zone it M-2 heavy industrial. The Property's location next to major transportation arteries, the Property's natural attributes, and the economic necessity of the materials that could be extracted from the Property all contribute to sustain a rational basis for zoning the Property M-2. The wider vicinity of the Property is commercial and industrial, and an M-2 designation cannot be deemed to be utterly inconsistent with the character of the area. The Property contains a valuable source of stone, and, indeed, previously has been the site of a quarry. It is reasonable that Clinton would wish to zone this tract such as to benefit from its economic potential in this respect. We, as did the Trial Court, find that Clinton had ample rational basis to render the zoning classifications of the Property that it did.

We hold that the decision of Clinton to zone the Property as it did withstands judicial review under the restricted standard of review in these cases. We cannot *per se* find that a quarry or asphalt plant could or could not operate on the Property consistent with the M-2 zoning classification. The relevant zoning ordinance provides wide latitude: "Any industry which does not cause injurious or obnoxious noise, odors, fire hazards, or other objectionable conditions as determined by the building official." Furthermore, a quarry and asphalt plant is not among the explicitly prohibited uses under the classification. More importantly, the only issue before the Trial Court, and now before this Court, was whether to uphold the decision of Clinton to zone the Property as it did. The question of whether a particular use of the Property such as for a rock quarry and asphalt plant would be permissible under the M-2 zoning classification was not a question properly before the Trial Court in this case or now before this Court. Clinton's decision to zone part of the Property M-2 was neither arbitrary, capricious, or illegal. We affirm the Trial Court as to this issue.

We next address whether the Trial Court erred in finding that the MSA did not constitute illegal contract zoning. This Court has discussed illegal contract zoning:

> The Appellant relies upon the cases of *City of Knoxville v. Ambrister*, 196 Tenn. 1, 263 S.W.2d 528 (1953) and *Haymon v. City of Chattanooga*, 513 S.W.2d 185 (Tenn. App. 1973) as supportive of her contention that contract zoning is not permissible in this jurisdiction. The *Ambrister* case arose when the City of Knoxville sought to enforce an agreement it made with a land developer. The city rezoned single dwelling residential property so a multiple

dwelling unit could be built.  In consideration for the rezoning, the property owner promised to dedicate part of the rezoned land to the city sometime in the future.  The dedicated property was to be used as a public park.  The property owner reneged on his promise to dedicate. The city filed suit to enforce the agreement.  The supreme court held this was an example of contract zoning and could not be enforced.

In *Haymon* the property owners agreed to execute a 25-year covenant to run with the land to maintain a 200-foot buffer zone of vacant property between their apartment buildings and adjoining land, which was given in exchange for rezoning.  The court of appeals said this amounted to contract zoning which is contrary to public policy and illegal in Tennessee. It stated:

The same rule with respect to the validity of contracts to influence zoning seems to prevail in numerous other jurisdictions, the consensus being that contracts entered into in consideration of concessions made favoring the applicant are frowned upon as against public policy [because] zoning is an instrument of public authority to be used only for the common welfare of all the people.

p. 188.

Conversely, in a footnote to the decision, the court also stated:

Nothing in this opinion is to be construed as holding that a planning commission without a covenant cannot prescribe reasonable conditions for the benefit of the general public.

p. 188, n. 1.

It is the use of governmental power as a bargaining chip that the *Ambrister* and *Haymon* courts criticized as the unsavory aspect of contract zoning.  When a government negotiates in this manner it agrees to limit its right and duty to act on behalf of the public.  Rezoning is approved, not based upon the merit of the zone change request nor because it is in the public interest, but because a deal has been struck.

On the other hand, the mere unilateral imposition of conditions for public benefit is quite different.  In contract zoning the government entity sacrifices its authority.  In conditional zoning it exercises it.  By imposing

conditions under which Homestead's property could be rezoned, Chattanooga did not bargain away its authority, but rather exercised it for public safety reasons.

*Benton v. City of Chattanooga*, 1988 WL 74608, at **2-3 (Tenn. Ct. App. July 20, 1988), *no appl. perm. appeal filed*. Contract zoning involves "bilateral negotiations . . . resulting in an agreement . . . ." *O'Dell v. Bd. of Com'rs of Johnson City*, 910 S.W.2d 436, 440 (Tenn. Ct. App. 1995).

The Plaintiffs argue: "Ultimately, Clinton's rezoning of the Rogers property constitutes illegal contract zoning because the City of Clinton utilized its governmental power as a bargaining chip and approved the rezoning, not because it was in the public interest, but because of the trilateral concessions contained in the MSA." In support of this argument, the Plaintiffs point to numerous promises made by Rogers Group in the MSA: donation of land to Clinton for use as a fire hall; donation of asphalt to Anderson County; and, dismissal with prejudice of Rogers Group's rezoning and takings suit against Anderson County.

The evidence does not preponderate against the Trial Court's finding relevant to this or any other issue before us on appeal. Our careful review of the evidence, including the MSA, reveals that Clinton never bargained away its authority to zone the Property as it saw fit. The MSA addresses conditions for a how a quarry would be operated, but ultimately, Clinton retained the authority to make the zoning determination. The MSA was a settlement to end, primarily, an annexation suit. There are no quid pro quos concerning Clinton's authority to make the zoning determination contained in the MSA, and the Plaintiffs acknowledge that the MSA does not explicitly require Clinton to zone the Property M-2. We, as did the Trial Court, find nothing in the evidence, including the MSA, that requires, explicitly or otherwise, Clinton to make a M-2 zoning determination. We decline to find that a requirement to zone M-2 somehow was implicit in the MSA. We affirm the Trial Court as to this issue.

We next address whether the Trial Court erred in finding that the zoning of the Property did not constitute illegal spot zoning. We have described what constitutes illegal spot zoning:

In *Phillips v. Tenn. Dep't of Transp.*, No. M2006-00912-COA-R3-CV, 2007 WL 1237695 (Tenn. Ct. App. M.S., April 26, 2007), this court summarized the Tennessee cases discussing spot zoning:

-10-

Spot zoning is the "process of singling out [a] small parcel of land for use classification totally different from that of [the] surrounding area, for [the] benefit of an owner of such property and to [the] detriment of other owners, and, as such, is [the] very antithesis of planned zoning."

*Id*. at *4 (citations omitted). Spot zoning is further discussed as follows in 83 Am.Jur.2d *Zoning and Planning* § 110 (2008):

In order to constitute "illegal spot zoning," a zoning ordinance: (1) must pertain to a single parcel or a limited area, ordinarily for the benefit of a particular property owner or specially interested party; and (2) must be inconsistent with the city's comprehensive plan, or if there is none, with the character and zoning of the surrounding area, or the purposes of zoning regulation, i.e., the public health, safety, and general welfare. In addressing a claim of improper spot zoning, the most important factor is whether the rezoned land is being treated unjustifiably different from the similar surrounding land, thereby creating an island having no relevant differences from its neighboring property.

*Id*. (citations omitted).

*Quoc Tu Pham v. City of Chattanooga*, No. E2008-02410-COA-R3-CV, 2009 WL 2144127, at *3 (Tenn. Ct. App. July 20, 2009), *no appl. perm. appeal filed*.

As we already have discussed more extensively in this Opinion, there was ample rational basis for Clinton's decision to zone the Property the way it did. The Property has a number of special characteristics rendering it suitable for M-2 heavy industrial classification. Furthermore, the tract at issue here is over 100 acres in size. This is not a case of singling out a small parcel of land for a use totally inconsistent with its surroundings. Given the rational foundation for Clinton's decision to zone the Property M-2 and the absence of evidence that the zoning was done simply to benefit the property owner, we find no basis that this zoning constitutes illegal spot zoning. We affirm the Trial Court as to this issue.

Finally, we address whether the Trial Court erred in finding that the Plaintiffs are not third-party beneficiaries of the MSA. "Generally, contracts are presumed to be 'executed for the benefit of the parties thereto and not third persons.'" *Owner-Operator*

*Independent Drivers Ass'n, Inc. v. Concord EFS, Inc.*, 59 S.W.3d 63, 68 (Tenn. 2001) (quoting *Oman Constr. Co. v. Tennessee Cent. Ry. Co.*, 212 Tenn. 556, 370 S.W.2d 563, 572 (1963)). Our Supreme Court has stated:

> As the Court pointed out in *Owner–Operator Independent Drivers Association v. Concord EFS, Inc.*, 59 S.W.3d 63 (Tenn. 2001), a third party is an intended third-party beneficiary of a contract, and thus entitled to enforce the terms of a contract, where (1) the parties to the contract have not otherwise agreed, (2) recognition of the third-party's right to performance is appropriate to effectuate the parties' intent, and (3) terms or circumstances indicate that performance of the promise is intended or will satisfy an obligation owed by the promisee to the third party. *Id*. at 70.

*Benton v. Vanderbilt University*, 137 S.W.3d 614, 618 (Tenn. 2004).

Additionally, we have stated:

> A contract entered into by a governmental entity requires a showing that the contract was intended by the parties to confer a direct obligation to identifiable third-party entities. Every contract into which a governmental entity enters is made for the benefit of all its citizens. Only when such a contract manifests a specific intent to grant individual citizens enforceable rights thereunder may a citizen claim such rights as a third-party beneficiary.

*Coburn v. City of Dyersburg*, 774 S.W.2d 610, 612 (Tenn. Ct. App. 1989).

The Plaintiffs contend, among other things, that "the terms of the contract indicate that performance of the MSA, *i.e.*, compliance with these operational conditions, will satisfy an obligation owed by Rogers to residents of the Bethel Community, and that Rogers intended to give residents of the Bethel Community the benefit of this performance." Sections 20 through 44 of the MSA provide for certain conditions for mitigating the effect of any new zoning, including Section 39 which provides: "Rogers shall only construct an asphalt plant incorporating state-of-the-art technology designed to minimize noise, odor, vibration, shock, dust and harmful substances."

The Plaintiffs were not parties to the MSA. Indeed, the Plaintiffs opposed approval of the MSA. There is no recognition in the MSA or otherwise that the Plaintiffs' right to demand performance would be appropriate to effectuate the parties' intent. Likewise, there is nothing in the record to support a finding that Rogers' performance of its obligations under the MSA was intended to or will satisfy any obligation owed by Rogers to

the Plaintiffs. The law on third-party beneficiary status is such that intent to confer such rights must be clear, particularly where governments are actors. There is no such clear intent present in the MSA. We hold that the Trial Court did not err when it found that the Plaintiffs failed to demonstrate the requisite intent that the MSA ever was meant to grant enforceable rights to particular citizens. We affirm the Trial Court on this and all issues.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellants, Citizens for Safety and Clean Air, Walt Warren, Patricia Warren, Charles Goins, and Judy Goins, and their surety, if any.

_____
D. MICHAEL SWINEY, JUDGE