SOUKUP *v.* SELL, MAYOR, *et al.*

(*Jackson*, April Term, 1937.)

Opinion filed May 5, 1937.

THOS. P. GORE, SAM R. HOWELL, and W. E. MILLER, all of Johnson City, for complainant Soukup.

COLIN B. MCKINNEY, of Johnson City, CATES, SMITH & LONG, of Knoxville, ROBERT M. MAY, of Jonesboro, and GUINN, MITCHELL & ERWIN and VINES, HAWKINS & BRYANT, all of Johnson City, for defendants.

MR. JUSTICE COOK delivered the opinion of the Court.

The complainant, a citizen and taxpayer of Johnson City, sued the mayor and board of commissioners of the city and W. N. Estes & Co. and Clark & Co., Inc., to enjoin the sale and delivery of refunding notes and bonds hereafter mentioned.

It was charged in the bill, as amended, (1) that the ordinance authorizing the issuance of the bonds was passed on a single reading, in a private room at the John Sevier Hotel, and the contract for the sale of the bonds was privately and secretly made without compliance with the general law, Code section 3707; and that in this the city commissioners abused their trust; (2) that the ordinance of January 4, 1937, providing for the issuance and sale of the bonds is void because passed by a single reading contrary to the charter; (3) that the enabling act passed by the General Assembly January 25, 1937, is void because inconsistent with the general law and because the caption of the act is deceptive and the body of the act broader than the caption.

The chancellor was of the opinion that the defendants should answer the bill and overruled the demurrers and motions to dismiss. The defendants elected to stand upon their motions and demurrers and a final decree was entered as upon *pro confesso*. Appeal was prayed and granted and errors have been assigned upon which it is insisted that the decree of the chancellor should be reversed.

The questions raised by the assignments will be disposed of without specific reference to particular assignments, there being eighteen in number.

■ Statements of the bill disclose that complainant is a citizen and taxpayer of the municipality and would be burdened with an increase of taxation resulting from an illegal and improvident refinancing scheme set up for the city. In such situation, a citizen may maintain a taxpayer's suit to avoid illegally imposed burdens.

■ But relief of taxpayers, unreasonably burdened by taxation under cover of valid laws and ordinances, is beyond the power of the courts. It is a legislative power intrusted to representatives selected by the people. And so the wisdom, policy, injurious tendency, or mischievous consequences of a statute or an ordinance are not open to inquiry on behalf of a burdened taxpayer through judicial proceedings. Moreover, the courts cannot consider alleged improper motives or even fraud as the inducing cause to legislative action, either state or municipal. That is so because the courts cannot invade the legislative department to inquire about motives, but must consider legislative acts, whether by assembly or by municipal board, as fair expressions of the public will.

■ But the courts may construe statutes. They may, now, consider whether a legislative act or a municipal ordinance violates the fundamental law and upon finding that it does, may declare the fundamental law superior to a temporary or a transient legislative movement or act. This inquiry is approached with the presumption that legislation is valid. The courts refuse to seek out constitutional defects or to hear complaints from those whose rights are not affected. They sustain legislation however ill-considered, inartificially drawn, or even oppressive, that does not violate constitutional rights. In this connection, wherever an act is suscepti-

ble of two constructions, one of which may render the act valid and the other invalid, the courts adopt the construction that will render the act valid.

Much is said in the briefs of counsel about the invalidity of the proceedings by the mayor and city commission. The validating act itself presumes that those proceedings were irregular. There would have been no good reason for the legislative enabling or validating act if the mayor and commission had observed provisions of the charter and of general laws regulating the issuance and sale of municipal bonds. Presumably for that reason the enabling act was sought. It is common knowldge that all such special acts, local in character, are controlled by the will of local representatives. That is a legislative courtesy and under it no outsider can interfere except possibly where controlling political considerations may permit.

Matters relating to municipalities in their governmental capacity do not fall within any forbidding provision of article 11, sec. 8 of the Constitution. The Legislature could have empowered Johnson City to issue refunding bonds by a special act without reference to any preceding action by the local authorities. Such acts applicable to towns, counties, and local governmental units are frequently passed and have often been recognized as valid enactments regulatory of local governments. *Ballentine* v. *Pulaski*, 15 Lea (83 Tenn.), 633; *Kee* v. *Parks*, 153 Tenn., 306, 283 S. W., 751; *McCord* v. *Marshall County*, 152 Tenn., 675, 280 S. W., 692.

What could be done by initial legislation may be validated by an act or acts approving irregular municipal action or procedure. *Muse* v. *Lexington*, 110 Tenn.,

655, 665, 76 S. W., 481; Dillon on Municipal Corporations, section 129; 19 R. C. L., p. 1026.

The ordinance involved followed negotiations with W. N. Estes & Co. and Clark & Co., Inc. On December 28, 1936, Clark & Co., Inc., and W. N. Estes & Co. submitted a proposal to the mayor and commissioners of Johnson City to refinance $200,000 of floating indebtedness and certain bonded indebtedness through the issuance of $1,250,000 of refunding bonds, to be made a first charge upon the net proceeds of the waterworks department as well as a charge upon the general fund. The $200,000 floating debt was to be taken up by issuance of like amount of temporary funding notes, which were to be taken by Clark & Co. and Estes & Co. at par subject to a commission of $12.50 a thousand.

The proposition was accepted by the mayor and the commissioners, or at least a majority of them, on December 28, the same day it was submitted. The refinancing agreement involving the bonds was approved by the mayor and commissioners, or a majority of them, on January 4, 1937. On the same date the ordinance involved was passed by a majority of the commission.

The caption of the ordinance expressed a purpose to authorize the issuance of $200,000 of funding notes and $1,250,000 of funding bonds. Recitals in the ordinance refer to the $200,000 as a floating debt and also refer to such additional floating debt as will increase the floating debt to $326,000.

The ordinance also lists and identifies bonds to be refunded and fixes the amount of such bonds at $924,-040.15. It is stated in the ordinance that the city had heretofore made an agreement with Clark & Co. and Estes & Co., pursuant to which the above floating indebt-

edness of $200,000 is to be funded in notes and pursuant to which the city is to authorize issuance of its refunding bonds in the principal amount of $1,250,000. The amount of bonds authorized for the specific purpose of paying the $200,000 floating debt and refunding the $924,040.15 of bonds, as specified in the ordinance, exceeds the amounts specified by the sum of $126,000.

Statements in the agreement and ordinance provide for the cancellation of any excess of bonds beyond the purposes authorized. The details of the ordinance and the contract are not material to a consideration of the validity of the act passed January 12, 1937. The caption and preamble of that act reads:

''An Act authorizing the City of Johnson City, Tennessee, to issue its funding notes in the amount of $200,000, and its refunding bonds in the amount of $1,250,000, validating, ratifying and confirming all proceedings had to date by the governing body of said City in connection with the authorization and issuance of said notes and bonds, empowering the governing body and officials of said City to take whatever additional steps may be necessary to complete the authorization and delivery of said notes and bonds, providing for the levy of taxes to pay principal thereof and interest thereon, and for the pledge and application of other revenues to such payment, repealing all conflicting Acts, and providing that this Act shall take immediate effect.

''Whereas on the fourth day of January, 1937, the Board of Commissioners of the City of Johnson City, Washington County, Tennessee, adopted an ordinance entitled 'An Ordinance authorizing the issuance of $200,000 funding notes and $1,250,000 refunding bonds of the City of Johnson City, Tennessee, prescribing the de-

tails thereof, providing for the payment of principal thereof and interest thereon, pledging certain revenues to the payment of said notes and bonds, and making certain collateral pledges and agreements for the security of said notes and bonds;' and

"Whereas the floating indebtedness authorized to be funded by the issuance of said funding notes and the bonds authorized to be refunded by the issuance of said refunding bonds all constitute the valid and legally binding indebtedness of said City of Johnson City, and it is essential to the credit and good name of said City that said outstanding indebtedness be retired by the issuance of said notes and bonds."

Here there is expressed an intention to approve an ordinance of Johnson City which authorized the issuance of funding notes and bonds to pay then existing indebtedness, and not to pay any future indebtedness that might be incurred. The caption and preamble of the act limit the funding notes that may be issued to meet floating indebtedness to $200,000 and limit refunding bonds to $1,250,000. While fixing that amount as a maximum of refunding bonds to be issued, the act relates to the ordinance and the purposes for which it was passed, and that purpose is very clearly expressed to be the re-establishment of the city's financial status by the diminution of interest on its obligations and to that end the refunding of specified bonds in the aggregate of $924,040.15. Section 1 of the act provides:

"That the ordinance of the City of Johnson City described in the preamble hereto (notwithstanding the failure of the Board of Commissioners to adopt said ordinance on more than one reading) and all other proceedings had by the governing body of said City with re-

446

spect to the authorization and sale or delivery of the funding notes and refunding bonds authorized by said ordinance, including the agreement or contract with respect to the purchase of said notes and bonds to which reference is made in said ordinance, are hereby in all things ratified, validated and confirmed, and that said funding notes and refunding bonds, when delivered, shall constitute the legal and binding indebtedness of said City and shall be payable from the sources and shall be secured in all respects as is provided in said ordinance.''

 The act must be construed, as declared by the caption and preamble, as an act approving the ordinance authorizing the issuance of $200,000 of funding notes to meet an equal amount of floating indebtedness, until the refunding bonds are sold, when they will be exchanged for an equal amount of refunding bonds, and to authorize issuance and sale of the refunding bonds to meet the bonds specifically described in the ordinance and for the specific amount shown in the totals copied into the ordinance.

If the act be otherwise construed, it would be necessary to declare it legislation under a deceptive caption and legislation very much broader than the purposes expressed in the caption. There is no reference in the caption to the disposition or use of the $126,000 difference between the amount of bonds authorized and the amount to which their proceeds was to be devoted.

This conclusion is supported by reference to the agreement of December 24 and the ordinance of January 4 that followed concurrence in the proposition made by Estes & Co. and Clark & Co. and by reference to the caption of the act showing that the Legislature was dealing with a proposal of the city to refinance its $200,-

000 floating debt and $508,000 of waterworks bonds, $76,-206.98 total tax bonds, $57,400 total assessment bonds, and $280,433.17 callable bonds, making an aggregate of $924,040.15.

The conclusion is also supported by the fact that there is a provision in the contracts and the ordinance for the cancellation of any bonds in excess of the amount necessary to refund the obligations referred to.

For the reasons stated, we find that the ordinance of January 4, 1937, and the validating act of January 12, 1937, authorized Johnson City to sell $200,000 refunding notes and to meet indebtedness existing at that time; and authorized the city to issue $1,250,000 of refunding bonds to cover the foregoing $200,000 short-term notes and to refund the bonds described in the ordinance aggregating $924,040.15, and for no other purpose. By giving the act such meaning, we find it a valid enactment under a proper caption.

For the reasons herein stated, the decree of the chancellor is reversed and the bill dismissed.

NOTE: FOR OPINION ON PETITION TO REHEAR, SEE INFRA, P. 491.