IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 7, 1999 Session

## CHARLES DALLAS CAUTHERN, ET AL. v. CITY OF WHITE BLUFF, TENNESSEE

**Appeal from the Chancery Court for Dickson County**
**No. 4820-97      Leonard W. Martin, Judge**

_____

**No. M1998-00991-COA-R3-CV - Filed June 27, 2002**

_____

This appeal stems from two landowners' efforts to change the zoning classification of their property from residential to commercial and industrial. After the White Bluff Town Council denied their request, the landowners filed a petition for writ of common-law certiorari in the Chancery Court for Dickson County alleging that the council's action was invalid because one council member who had recused himself from voting on the proposed zoning change actively opposed their request and caused another council member to recuse himself. The trial court, sitting without a jury, denied the landowners' petition, and the landowners have appealed. Treating the petition as a complaint of declaratory judgment, we have determined that the effectiveness of the council member's recusal is a nonjusticiable political question. Accordingly, we affirm the trial court's conclusion that the landowners were not entitled to judicial relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Kevin T. Sommers, Kingston Springs, Tennessee, for the appellants, Charles Dallas Cauthern and Carolyn Sue Cauthern.

Stan Reynolds, Dickson, Tennessee, for the appellee, The City of White Bluff, Tennessee.

## OPINION

Charles Dallas Cauthern and Carolyn Sue Cauthern own lots 34, 35, and 36 of the Howell subdivision in the City of White Bluff. Their home at 1020 Oak Drive is on lot 35, and lots 34 and 36 are on either side of lot 35. All three lots are zoned R-1 (residential), as is every lot on Oak Drive. The Cautherns' property is bounded on the west and north by the lumber cutting operation of World Wide Woods, Inc. The company's property on the west side of the Cautherns' property

is zoned industrial. Even though the company's property to the north of the Cautherns' property is zoned residential, logging is permitted on this property as a prior nonconforming use.

The Cautherns became unhappy with having a sawmill so close to their home. Accordingly, they tentatively agreed to sell their three lots to World Wide Woods. The sale was contingent on rezoning lot 35 to C-1 (commercial) and lot 36 to I-1 (industrial). Accordingly, the Cautherns applied to the White Bluff Planning Commission to have lots 35 and 36 rezoned. Following a public hearing, the planning commission recommended approval of the requested rezoning.

Next, the Cautherns requested the White Bluff Town Council to enact an ordinance rezoning their property. During the public hearing, Eric Tidwell, a member of the town council, announced that he intended to recuse himself from voting on the Cautherns' request because he lived near their property and was biased against any zoning change. Following his announcement, Mr. Tidwell spoke against the zoning change and called on another council member, Mack Bennett, to recuse himself as well. Mr. Bennett had previously done survey work for World Wide Woods and had approved the Cautherns' request when he was a member of the planning commission. Mr. Bennett acceded to Mr. Tidwell's request and recused himself.

The three remaining members of the town council unanimously voted against rezoning the Cautherns' property. They based their decision on three factors. First, they feared that rezoning the Cautherns' property might be construed as illegal "spot zoning" by a reviewing court. Second, they were concerned that rezoning the Cautherns' property would increase logging activity and bring lumber cutting operations closer to the other residents on Oak Drive. Finally, they determined that lot 35 could not be zoned commercial because it was not served by a sanitary sewer.

The Cautherns filed a petition for common-law writ of certiorari[1] in the Chancery Court for Dickson County alleging, among other things (1) that the town council arbitrarily failed to give consideration to the evidence in favor of rezoning their property, (2) that Mr. Tidwell's continued opposition to their request for rezoning "invalidated" the vote, (3) that Mr. Bennett was "wrongfully required" to recuse himself, and (4) that White Bluff has acted arbitrarily and capriciously by allowing industrial development to surround their property but refusing to rezone their property for its highest and best use. The trial court denied the Cautherns' petition on the grounds that the Council did not act illegally, arbitrarily, or capriciously when it denied the Cautherns' request to rezone their lots. The Cautherns now appeal from this judgment.

_____

[1]The appellate courts have repeatedly pointed out that an action for declaratory judgment, rather than a petition for common-law writ of certiorari, is the only proper vehicle for obtaining judicial review of a local legislative body's decision not to amend a zoning ordinance. *Fallin v. Knox County Bd. of Commr's*, 656 S.W.2d 338, 342 (Tenn. 1983); *Cato v. Montgomery County Bd. of Commr's*, No. M2001-01846-COA-R3-CV, 2002 Tenn. App. LEXIS 369, at *3 n.1 (May 23, 2002); *Day v. City of Decherd*, No. 01A01-9708-CH-00442, 1998 WL 684533, at *1 (Tenn. Ct. App. July 1, 1998) (No Tenn. R. App. P. 11 application filed). Like the courts in *Fallin*, *Cato*, and *Day*, we will reach the merits of the landowners' appeal in this case by treating their petition for writ of common-law certiorari as a complaint for declaratory judgment.

## II.
### THE ROLES PLAYED BY MESSRS. TIDWELL AND BENNETT

We first take up the two related issues regarding the participation of Messrs. Tidwell and Bennett in the town council's consideration of the Cautherns' rezoning request. The Cautherns argue that Mr. Tidwell's vocal opposition to rezoning their property after he recused himself from voting on their request and his request that Mr. Bennett likewise recuse himself somehow invalidated the council's decision. These arguments reflect a fundamental misconception regarding the courts' role when asked to review legislative decisions.

Amending a zoning ordinance is a legislative act. *McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990)*; Family Golf of Nashville, Inc. v. Metro. Gov't of Nashville*, 964 S.W.2d 254, 258 (Tenn. Ct. App. 1997). The procedures adopted by a legislative body for the conduct of its business and its decisions regarding a particular legislative issue are not subject to the same standard of review routinely used to review the fairness of judicial or administrative proceedings. In judicial and administrative proceedings, the litigants are entitled to the cold neutrality of an impartial tribunal. *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001) (judicial tribunal); *Martin v. Sizemore*, No. M1997-00203-COA-R3-CV, 2001 WL 950190, at *6 (Tenn. Ct. App. Aug. 22, 2001) (No Tenn. R. App. P. 11 application filed) (administrative tribunal); *Kinnard v. Kinnard*, 986 S.W.2d 220, 227 (Tenn. Ct. App. 1998) (judicial tribunal). Thus, judges and members of administrative tribunals must step aside when their impartiality might reasonably be questioned. *Chumbley v. People's Bank & Trust Co.*, 165 Tenn. 655, 659, 57 S.W.2d 787, 788 (1933) (judges); *Tennessee Cable Television Ass'n v. Tennessee Public Serv. Comm'n*, 844 S.W.2d 151, 164-65 (Tenn. Ct. App. 1992).

The same cannot be said for the legislative arena. Persons seeking essentially legislative decisions from legislative bodies are not entitled to the same degree of impartiality. Members of legislative bodies are not acting like judges when they consider a proposed change in an existing zoning ordinance. As this court has pointed out:

> Legislators, however, do what legislators do; they listen to their constituents; they test the wind; they try to please as many people as possible, consistent with the constitution and good conscience. And they are not to be condemned for doing so. That is their job.

*Day v. City of Decherd*, 1998 WL 684533, at *3.

The question of recusal by members of local legislative bodies in the context of amendments to a zoning ordinance is not new. Approximately twenty years ago, landowners who were unsuccessful in having their property rezoned challenged the legislative body's decision on the basis that three of the local legislators were biased against their proposal for political reasons. Sensing

the futility of challenging the decision on the legislators' failure to recuse themselves, the landowners argued that the proceeding was "quasi-judicial" and, therefore, that they were entitled to an impartial hearing based only on the facts presented to the legislative body. This court rejected the characterization of the proceeding as "quasi-judicial" and upheld the local legislative body's decision. *Fiser v. City of Knoxville*, 584 S.W.2d 659, 661 (Tenn. Ct. App. 1979). The courts cannot inquire into the motives or methods of the local legislative body in matters such as this. *White v. Henry*, 199 Tenn. 219, 230, 285 S.W.2d 353, 358 (1955); *Davidson County v. Rogers*, 184 Tenn. 327, 333-34, 198 S.W.2d 812, 815 (1947); *Soukup v. Sell*, 171 Tenn. 437, 441, 104 S.W.2d 830, 831 (1937). Thus, a legislative action by a local legislative body will not be second-guessed by the courts simply because one or more of the legislators were biased either for or against the proposal under consideration.

The White Bluff Town Council's decisions regarding amendments to its local zoning ordinance are essentially political questions. Unless the town council violates the town charter, state law, or the state or federal constitutions, it's actions are not subject to judicial review. While Tenn. Code Ann. § 12-4-101(c)(3)(A) (1999) contains rules governing the conduct of members of local governing bodies who have a direct interest in a public contract, we can find no statute or other rule of law forbidding members of a town council who have recused themselves from considering a change in a tract's zoning classification from lobbying other council members either in favor of or against the proposed zoning change. Thus, neither Mr. Tidwell's conduct after he recused himself nor Mr. Bennett's decision to recuse himself or the effects of their actions on the remaining council members are reviewable by the courts. The Cautherns' remedy is at the ballot box.

### III.
#### THE ADEQUACY OF THE BASIS FOR THE TOWN COUNCIL'S DECISION

The courts have consistently used a deferential standard to review a local legislative body's enactment or revision of its zoning ordinance. Because local legislative bodies have broad discretion in zoning matters, *Family Golf of Nashville, Inc. v. Metropolitan Gov't*, 964 S.W.2d at 260, the courts decline to second-guess a decision either to approve or disapprove an amendment to a zoning ordinance as long as the decision has some conceivable, appropriate basis to justify it, *Fallin v. Knox County Bd. of Commr's*, 656 S.W.2d at 343-44, or if the issue is fairly debatable. *Keeton v. City of Gatlinburg*, 684 S.W.2d 97, 98 (Tenn. Ct. App. 1984).

The White Bluff Town Council's denial of the Cautherns' request to rezone their property easily passes muster under this rational basis test because the record contains cogent reasons for the decision. First, allowing the sawmill to expand its operations further into the residential neighborhood surrounding Oak Drive would simply pass the problems the Cautherns had been experiencing to the remaining homeowners. Second, the town council determined that rezoning lot 35 from R-1 to C-1 would have violated another ordinance requiring permitted uses in C-1 districts

to be served by public water and sanitary sewer.[2]  Third, the Council found that rezoning lot 36 to I-1 (industrial) would expand the existing logging operations, thereby increasing the danger to residents of Oak Drive.  Finally, the town council feared the courts could invalidate the requested rezoning of lots 35 and 36 as illegal "spot zoning."

## IV.

We affirm the judgment dismissing the landowners' challenge to the White Bluff Town Council's denial of the proposed change in the zoning classification of their property and remand the case to the trial court for whatever further proceedings may be required.  We tax the costs of this appeal to Charles Dallas Cauthern and Carolyn Sue Cauthern and their surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

---

[2]White Bluff, Tennessee, Municipal Zoning Ordinance § 5.062.1(B) (June 5, 1990).