IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 17, 2025 Session

## TOWN OF GREENBACK, TENNESSEE, ET AL. v. M&M STONE FARMS, LLC, ET AL.

**Appeal from the Chancery Court for Loudon County**
**No. 13237          Tom McFarland, Chancellor**

———————————————————

**No. E2024-01838-COA-R3-CV**

———————————————————

This action involves the proper use and zoning of a parcel of real property. The trial court granted summary judgment in favor of the property owner, determining that the owner's use of the property as a quarry was not prohibited because the subject property was unzoned. The trial court based its ruling on the municipality's inability to produce a validly enacted zoning ordinance that applied to the specific parcel. The municipality and its planning commission have appealed. Discerning no reversible error, we affirm. We also find that the property owner's motions to consider post-judgment facts and to dismiss the appeal are not well taken, and we deny those motions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and JEFFREY USMAN, JJ., joined.

Brian R. Bibb, Knoxville, Tennessee, and Melanie E. Davis, Maryville, Tennessee, for the appellant, the Town of Greenback, Tennessee.

Robert L. Bowman and Nathaniel D. Moore, Knoxville, Tennessee, for the appellant, the Regional Planning Commission of Loudon County, Tennessee.

Michael S. Kelley; Rob Quillin, II; and Jeffrey M. Cranford, Knoxville, Tennessee, for the appellees, M&M Stone Farms, LLC, and Tri-County Crushed Stone, LLC.

# OPINION

## I. Factual and Procedural History

The facts underlying this action are undisputed. On April 22, 2024, the Town of Greenback, Tennessee ("the Town"), and the Loudon County Regional Planning Commission ("RPC") filed a complaint in the Loudon County Chancery Court ("trial court") against the defendants, M&M Stone Farms, LLC ("M&M"), and Tri-County Crushed Stone, LLC ("Tri-County") (collectively, "Quarry Defendants"). Two days later, Quarry Defendants filed a separate lawsuit against the Town in the trial court based upon the same set of facts. On May 9, 2024, the Quarry Defendants filed a motion to consolidate the two lawsuits, which the trial court granted on June 3, 2024.

In their complaint, the Town and RPC generally alleged that Quarry Defendants were engaged in a limestone quarry operation that was prohibited by recently enacted Greenback Zoning Ordinance No. 23-5. Quarry Defendants averred in their complaint that Ordinance No. 23-5 was invalid because the proper statutory procedures were not followed concerning its adoption. Quarry Defendants further averred that the property at issue was unzoned and therefore suitable for use as a quarry.

According to their complaint, Quarry Defendants are business entities operating within the corporate limits of Greenback, Tennessee. Both businesses are either owned by or associated with the same individual, local entrepreneur Rodney Murphy. Quarry Defendants explained that in March 2023, Tri-County and Mr. Murphy had executed a real estate purchase agreement with the Hutton family for the property at issue in this case ("the Hutton Property") to explore its suitability for use as a limestone quarry. The Huttons conveyed the entire Hutton Property to M&M on January 12, 2024. M&M subsequently leased a 76-acre portion of the Hutton Property ("the Quarry Property") to Tri-County, which is where the quarry was ultimately constructed.

Mr. Murphy filed an affidavit stating that on April 11, 2023, he had met with the Mayor of Greenback, Dewayne Birchfield, and the Town's Board of Aldermen ("the Board") to describe his plans for a quarry. Mr. Murphy further stated that prior to this meeting, Mayor Birchfield had told him that the Quarry Property was zoned "M-1," light industrial, and showed him a colored map that reflected such designation. Mr. Murphy explained that at that time, no one on his behalf had examined the Town's records to determine the actual zoning designation applicable to the Quarry Property.

Mr. Murphy reported that during the meeting with the Mayor and the Board, Mr. Murphy had made the following comment: "I am currently in negotiations to start a quarry on the 236-acre Hutton Farm on Hutton Road in Greenback. As of now it's zoned M-1, light industrial, but can be a special exemption to have mining and a quarry[.]" However, Mr. Murphy articulated that he had later learned from his attorney that the Hutton Property

2

had never been zoned after it was annexed by the Town.[1]  Specifically, he stated that there was no ordinance in the Town's public records that imposed any zoning on the Quarry Property.  Upon learning this information, Mr. Murphy had begun moving forward with his business plans and had obtained permits from the Tennessee Department of Environment and Conservation ("TDEC") authorizing Tri-County to begin quarry operations.

In the Complaint filed on April 22, 2024, the Town and RPC averred that the Town had received complaints about a "non-permitted activity" occurring on the Quarry Property because there was equipment on site removing soil in preparation for a rock quarry.  The Town asserted that it had sent M&M a letter after inspecting records from TDEC that indicated M&M had been issued a permit for a rock quarry.[2]  In essence, this letter provided:  (1) the Hutton Property was not zoned for a quarry, (2) M&M was in violation of Section 4-408[3] of the Greenback Zoning Ordinance, and (3) M&M should immediately cease the development activities and stabilize the exposed soil to bring the Hutton Property into compliance.  The Town sought declaratory judgment and a permanent injunction barring Quarry Defendants from operating a rock quarry or engaging in any prohibited activities on the Hutton Property.

In their complaint, Quarry Defendants claimed that on March 27, 2024, M&M had received a letter from the Town's "Building Official," directing that M&M cease quarry operations because the Quarry Property was not zoned for operation of a rock quarry.  Quarry Defendants averred that prior to receipt of this letter, they had no knowledge that the Quarry Property purportedly had been zoned because the recent passage of Ordinance No. 23-5 had occurred without the knowledge of M&M, Tri-County, Mr. Murphy, or the Huttons.  The Town had purportedly enacted Ordinance No. 23-5, which attempted to zone the Quarry Property M-1, at a public meeting of the Board on January 9, 2024, during which the ordinance had been adopted on second reading.  The first reading of the Ordinance had occurred at a public meeting on December 12, 2023.

Quarry Defendants averred that the only publication of the Board meetings or public hearings related to Ordinance No. 23-5 had been in the form of a "vague reference" in the *Maryville Daily Times* on December 6, 2023.  In their pleadings, Quarry Defendants maintained that this notice failed to comply with statutory and constitutional requirements for zoning property, including the requirements in Tennessee Code Annotated § 13-7-203 that a public hearing be held to adopt such an ordinance and that notice of the public hearing

---

[1] A large portion of land, which encompassed the entire Hutton Property, was annexed by the Town in 1998.

[2] It appears that the letter was sent to M&M in error due to confusion about which of Mr. Murphy's businesses was operating the quarry.

[3] Section 4-408 of the Greenback Zoning Ordinance outlines the permitted uses of M-1 districts.

be published in a newspaper of general circulation at least fifteen days prior to the date of the hearing.[4]

It is undisputed that at on December 12, 2023, the Town held a public hearing relative to Ordinance No. 23-5 wherein the RPC recommended its passage. Immediately thereafter, the Board adopted the ordinance on first reading at their monthly meeting. It is also undisputed that notice of the public hearing had been published in the *Maryville Daily Times* six days earlier on December 6, 2023. The notice read:

PUBLIC NOTICE

The Town of Greenback Board of Mayor and Aldermen will meet in a regularly scheduled monthly meeting on Tuesday December 12, 2023 at 7:00 pm in the Greenback Community Center. There will be a Public Hearing and first reading of an ordinance to ratify, confirm and adopt the zoning map of the Town of Greenback and adopt zoning of property previously annexed into the Town.

Accordingly, Quarry Defendants maintained that the Hutton Property was never zoned after its 1998 annexation and that the Town did not comply with the applicable statutory requirements when adopting Ordinance No. 23-5. In their complaint, Quarry Defendants sought a declaratory judgment that Ordinance No. 23-5 was void, invalid, and of no effect; preliminary and permanent injunctions preventing the Town from interfering with their use

---

[4] The version of the statute in effect at the time this action was initiated provided:

(a)    Before enacting the zoning ordinance or any amendment thereof, the chief legislative body shall hold a public hearing thereon, at least fifteen (15) days' notice of the time and place of which shall be published in the official municipal journal or in a newspaper of general circulation in the municipality.

(b)    No change in or departure from the text or maps as certified by the planning commission shall be made, unless such change or departure be first submitted to the planning commission and approved by it, or, if disapproved, shall receive the favorable vote of a majority of the entire membership of the chief legislative body.

(c)    Notwithstanding the requirements of any municipality's charter to the contrary, the entire text of a comprehensive zoning ordinance need not be published in a newspaper. For those municipalities whose charters do require ordinances to be published in a newspaper, it shall be sufficient for the comprehensive zoning ordinance that its caption and a complete summary be published.

Tenn. Code Ann. § 13-7-203 (West 1984 to July 1, 2024). The statute was amended in 2024 and now requires that twenty-one days' notice be given of the public hearing. *See* 2024 Tenn. Pub. Acts, ch. 701, § 3.

of the Hutton Property; and a monetary judgment.  With leave of the trial court after the actions were consolidated, Quarry Defendants filed an amended complaint on July 11, 2024.[5]

RPC and the Town each filed separate answers to the amended complaint on August 6, 2024, and August 7, 2024, respectively, and denied the majority of the amended complaint's allegations.  The Town also relied on various affirmative defenses, including waiver, estoppel, and lack of standing.

On August 9, 2024, Quarry Defendants filed a motion for summary judgment, positing that the undisputed facts established that Ordinance No. 23-5 was invalid due to non-compliance with the requirements of Tennessee Code Annotated § 13-7-203.  In support of the motion, Quarry Defendants attached the deposition of the City Recorder, Deborah Bowman, who reported:  (1) the Town always published notices of its public hearings in the *Maryville Daily Times*; (2) the notice published on December 6, 2023, was notice for the public hearing and the monthly meeting; (3) the December 6 publication was the only time notice of the hearing was put in a newspaper; and (4) the publication did not indicate that the public hearing was going to begin prior to the monthly meeting, which was to take place at 7:00 p.m.  When asked whether there were any properties other than the parcel containing the Hutton Property that were zoned M-1 on December 12, Ms. Bowman answered in the negative.  She further stated that the Hutton Property was "clarified" as having been zoned M-1 that day.

On August 22, 2024, the Town and RPC filed a motion to amend their complaint based on newly discovered information.  In their proposed amended complaint, the Town and RPC advanced the position that the Hutton Property had been zoned M-1 since at least 2001 and that the Town had, in January 2024, "confirmed and ratified that zoning" by virtue of Ordinance No. 23-5.  The trial court granted the motion to amend on September 12, 2024, and the Town and RPC subsequently filed the amended complaint.  In their answer to the amended complaint, Quarry Defendants denied the new allegations that the Hutton Property had been zoned since at least 2001.

Meanwhile, on August 28, 2024, the Town and RPC filed a competing motion for summary judgment as to all claims against them and all claims they had brought against Quarry Defendants.  In the motion, the Town and RPC responded that the zoning map of Greenback, Tennessee, was amended to include the Hutton Property in the M-1 zoning district after its annexation in 1998 and that this amendment took place no later than 2001.  They further asserted that multiple subsequent amendments to the zoning ordinance and zoning maps had confirmed and ratified the "original adoption" of M-1 zoning of the

---

[5] Although structured and phrased somewhat differently, the two complaints filed by Quarry Defendants appear to be substantially the same.  However, the amended complaint named RPC as a second defendant.

Hutton Property and that the official zoning map of the Town of Greenback currently reflected that zoning.

Moreover, the Town and RPC proffered that pursuant to Tennessee Code Annotated § 13-7-212, "the promulgation of a comprehensive zoning ordinance and zoning map" created a presumption that a property was properly zoned and that the burden of proof rests with the challenging party to prove by clear and convincing evidence that the map was inaccurate. In its memorandum in support of its motion, the Town and RPC claimed that there had been a "systemic loss" of municipal records in 2018 when the former Mayor, Tom Peeler, had left office. The Town and RPC asserted that when Mayor Birchfield assumed office, he and Ms. Bowman discovered that Mr. Peeler and his wife, who formerly served as the Town's recorder, had engaged in "significant shredding of records" and emptying of all municipal filing cabinets. Although no original ordinance zoning the Hutton Property as M-1 had been located, the Town and RPC insisted that multiple zoning maps from 2001 to the present showed that the Hutton Property had been zoned M-1 since at least that time. Those maps and a number of other documents were attached to the Town's and RPC's memorandum in support of their motion. Moreover, the Town and RPC relied on Ms. Bowman's affidavit stating that Mr. Murphy had acknowledged that the property was zoned M-1 at the April 11, 2023 meeting with the Mayor and Board of Aldermen.

On September 19, 2024, Quarry Defendants filed an amended motion for summary judgment in light of the allegations contained in the amended complaint. Quarry Defendants continued to urge that Ordinance No. 23-5 was void as a matter of law and requested that the trial court enter judgment in their favor declaring that the Hutton Property was currently unzoned because of the failure of the Town and RPC to comply with state law in the adoption of Ordinance No. 23-5, as well as the Town's failure to adopt and publish a zoning ordinance applicable to the Hutton Property prior to that time.

On October 22, 2024, Quarry Defendants filed a response in opposition to the motion for summary judgment filed by the Town and RPC. Quarry Defendants disputed the accuracy of the current zoning map of Greenback inasmuch as the map was unauthenticated and neither the Town nor RPC possessed an original or copy of an ordinance that zoned the Hutton Property prior to the attempt to do so on December 12, 2023. Referring to Mayor Birchfield's deposition, Quarry Defendants also asserted that Mayor Birchfield's sole basis for believing that the Hutton Property was zoned M-1 was a map prepared in 2019 by an unknown individual in the Loudon County Property Assessor's office.

The trial court conducted a hearing on the parties' countervailing motions for summary judgment on October 30, 2024. During oral argument, the Town and RPC conceded that they could not produce a copy of an original ordinance applying M-1 zoning to the Hutton Property. However, the Town and RPC referred the trial court to maps that

showed the Hutton Property as having been zoned M-1 prior to the adoption of Ordinance No. 23-5. The Town and RPC also conceded that adequate records demonstrating publication of ordinances had not been maintained. Nevertheless, the Town and RPC advanced the position that Tennessee Code Annotated § 13-7-212 created a presumption of accuracy when zoning ordinances and maps are compiled by a municipality. They further claimed that the public had relied on certain maps demonstrating that the Hutton Property was zoned M-1.

In its ruling from the bench, the trial court found by clear and convincing evidence that Ordinance No. 23-5 was invalid. The court also ruled that the notice published was defective because it would not have put an individual on notice that his or her real property would be subject to rezoning, it was vague as to the time of the hearing, and the fifteen-day requirement contained in the statute had not been met. Moreover, the trial court stated:

> The way I understand the statutes, especially § 13-7-212, they are created by the legislature to make sure a property owner has notice and understands what's going on with the government regulation of their property. And a map without an ordinance, the Court believes, in and of itself, is vague and ambiguous.

The trial court found that the various maps produced by the Town and RPC to establish that the Hutton Property was zoned M-1 were insufficient because the Town had not demonstrated that any of the maps had been formally adopted, meaning that a "citizen/landowner/potential landowner would not be able to ascertain [how their property was zoned] from what was on file and public record with the City of Greenback."

The trial court accordingly entered an order on November 13, 2024, granting Quarry Defendants' motion for summary judgment and denying the opposing motion filed by the Town and RPC. In doing so, the trial court declared that the Hutton Property was unzoned. The Town and RPC timely appealed.

Following a show cause order from this Court, the parties sought a final order from the trial court addressing the issues of Quarry Defendants' requests for a permanent injunction, attorney's fees, and discretionary costs. On May 19, 2025, the trial court entered a final judgment granting Quarry Defendants' request for a permanent injunction prohibiting the Town from interfering with Quarry Defendants' use of the Hutton Property as a quarry. Determining that there was no basis for an award of attorney's fees, the court denied that request. However, the court granted Quarry Defendants' request for discretionary costs in the amount of $3,463.88.

## II. Issue Presented

The Town and RPC present the following issue on appeal, which we have restated slightly:

Whether the trial court erred by concluding that Quarry Defendants met their burden to establish by clear and convincing evidence that the Town's zoning ordinances and zoning map reflecting M-1 zoning on the Hutton Property were invalid and that the Hutton Property was unzoned.

## III. Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

[W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must

do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.* [*v. Zenith Radio Corp.*], 475 U.S. [574,] 586, 106 S. Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65. Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014). "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019) (quoting *Rye*, 477 S.W.3d at 265).

## IV. Pending Motions

Quarry Defendants have filed motions requesting that this Court consider post-judgment facts and dismiss this appeal. Quarry Defendants argue that because the quarry has been completed and is now fully operational, the appeal should be dismissed as moot. Upon consideration, we find that these motions are not well taken and accordingly deny the motions.

## V. Tennessee Code Annotated § 13-7-212

On appeal, the Town and RPC appear to acknowledge that Ordinance No. 23-5 was not a properly enacted zoning ordinance pursuant to the requirements of Tennessee Code Annotated § 13-7-203. The version of § 13-7-203 (West 1984 to June 30, 2024) in effect at the time the Town attempted to enact Ordinance 23-5 provided that before a zoning ordinance or amendment could be enacted by a municipality, "the chief legislative body

9

shall hold a public hearing thereon" after providing "at least fifteen (15) calendar days' notice of the time and place of which shall be published in . . . a newspaper of general circulation in the municipality." It is undisputed that the Town did not comply with § 13-7-203's fifteen-day notice requirement when enacting Ordinance No. 23-5.

Tennessee law is clear that when a legislative body does not comply with statutory requirements when passing zoning ordinances, those ordinances are void. *See Henry v. White*, 250 S.W.2d 70, 72 (Tenn. 1952) ("If a zoning ordinance violates the requirements and prohibitions of the statute which authorizes that zoning ordinance, then, to the extent of such violation such zoning ordinance is invalid."); *Town of Surgoinsville v. Sandidge*, 866 S.W.2d 553, 556 (Tenn. Ct. App. 1993) ("Where the enabling act prescribes the time which must elapse between notice and hearing, failure to comply renders a zoning ordinance invalid.") (quoting 83 Am. Jur. 2d Zoning and Planning § 589). Because the Town failed to comply with Tennessee Code Annotated § 13-7-203's fifteen-day notice requirement when enacting Ordinance No. 23-5, the trial court properly determined that Ordinance No. 23-5 was void and of no effect.

The main argument advanced on appeal by the Town and RPC, however, is that other valid zoning ordinances, amendments, and maps prove that, at one point in time, the Hutton Property was properly zoned M-1 and that it remains that way today. To bolster their argument, the Town and RPC have produced a collection of maps dated from 2001 to the present that purport to demonstrate the Hutton Property having been zoned M-1, presumably at some point between its annexation in 1998 and the first map dated 2001. The Town and RPC further argue that the residents of Greenback had relied on the M-1 zoning designation for a substantial amount of time. According to the Town and RPC, under Tennessee Code Annotated § 13-7-212, a presumption of correctness exists with respect to these maps and amendments. We disagree.

Our research indicates that this is the first time a Tennessee appellate court has been tasked with construing Tennessee Code Annotated § 13-7-212 (West June 1, 2009, to current).[6] This statute provides:

> (a)     Any municipality that has exercised zoning powers under this part shall compile its zoning ordinance and map, as amended, that is in effect so as to be able to provide any member of the public with a current zoning ordinance and map. In that municipality, the municipal legislative body shall authenticate, compile, update, keep, maintain and make available the zoning ordinance, map and all amendments as

---

[6] Unless otherwise noted, throughout this Opinion, all citations to any section within Tennessee Code Annotated §§ 13-7-201 to 13-7-212 shall be made in reference to the version that was effective on the date this action was initiated. In some instances, such as this one, the section that was in effect at the time the action was filed has not changed and therefore remains current.

public record. Any municipal zoning ordinance and map made available to the public through a compilation made pursuant to this section, whether in electronic or paper form, shall be presumed to be a true and accurate statement of the municipality's zoning ordinance and map.

(b) Any party challenging the accuracy of any municipal zoning ordinance or map compiled or codified as currently in effect in accordance with this section, whether in a rezoning proceeding before a municipal governing body, an appeal to a board of zoning appeals, a subdivision or site plan approval proceeding before a planning commission or in any judicial proceeding, must prove the inaccuracy of the zoning ordinance or map by clear and convincing evidence.

The Town and RPC contend that § 13-7-212 stands for the proposition that Quarry Defendants bear the burden of proving by clear and convincing evidence the inaccuracy of the alleged zoning of the Hutton Property. "Clear and convincing evidence enables the factfinder to form a firm belief regarding the truth of the facts and eliminates any serious or substantial doubt about the correctness of these factual findings." *See In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (internal citation omitted).

However, we find it unnecessary to reach the issue of Quarry Defendants' burden of proof because the undisputed facts establish that the Town and RPC have not complied with the requirements that would render § 13-7-212 applicable here. Tennessee law is clear that a local legislative body's authority to enact and amend zoning ordinances requires compliance with statutorily mandated procedures. *See Edwards v. Allen*, 216 S.W.3d 278, 285 (Tenn. 2007). This is because the right to "own, use, and enjoy" one's property is a fundamental right, *see Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 474 (Tenn. 2012), and local governments can only impose zoning restrictions on property when authorized to do so by the Tennessee legislature, *see State ex rel. Lightman v. City of Nashville*, 60 S.W.2d 161, 162 (Tenn. 1933). Our statutory scheme plainly sets out the proper procedures for enacting and amending zoning ordinances and empowers the Town to regulate land use through zoning, provided they do so "<u>in accordance with the conditions and the procedure specified in this part</u> . . . ." Tenn. Code Ann. § 13-7-201(a)(1) (emphasis added).

Part 2 of Title 13, Chapter 7 delineates various requirements for adoption of a zoning plan and any amendments thereto. Tennessee Code Annotated § 13-7-202 provides:

Whenever the planning commission of the municipality makes and certifies to the chief legislative body a zoning plan, including both the full text of a zoning ordinance and the maps, representing the recommendations of the planning commission for the regulation by districts or zones of the location, height, bulk, number of stories and size of buildings and other structures, the

11

percentage of the lot which may be occupied, the size of yards, courts and other open spaces, the density of population, and the uses of buildings, structures and land for trade, industry, residence, recreation, public activities and other purposes, and identify areas where there are inadequate or nonexistent publicly or privately owned and maintained services and facilities when the planning commission has determined the services are necessary in order for development to occur, then the chief legislative body may exercise the powers granted and for the purposes mentioned in § 13-7-201, and may divide the municipality into districts or zones of such number, shape and areas it may determine, and, for such purposes, may regulate the erection, construction, reconstruction, alteration and uses of buildings and structures and the uses of land.

We reiterate that the version of § 13-7-203(a) in effect at this lawsuit's initiation provided in pertinent part:

Before enacting the zoning ordinance <u>or any amendment thereof</u>, the chief legislative body shall hold a public hearing thereon, at least fifteen (15) days' notice of the time and place of which shall be published in the official municipal journal or in a newspaper of general circulation in the municipality.

(Emphasis added.) Finally, regarding amendments of zoning ordinances and maps, Tennessee Code Annotated § 13-7-204 provides that while the same may be amended from time to time, "no amendment shall become effective unless it is first submitted to and approved by the planning commission . . . ."

In the case at bar, the Town has presented a comprehensive zoning ordinance that was adopted by the Town in 1986. This ordinance provides for distinct classifications of property within the Town's limits and describes how those classifications differ. It also provides various lot and building requirements and other limitations. Moreover, the comprehensive zoning ordinance refers to a zoning map dated July 1981, which was specifically adopted and made a part of the ordinance.

The Town and RPC assert that this comprehensive zoning ordinance was amended during the ensuing years to zone and classify various parcels of property within the Town as residential, agricultural, industrial, and so on. According to the Town and RPC, when these amendments were enacted, the zoning map was updated to reflect the zoning classifications and changes with the most recent version of the map having been updated in 2019. With respect to the Hutton Property, however, the Town and RPC have been unable to produce (1) an ordinance originally zoning the Hutton Property after its annexation by the Town in 1998; (2) any publication demonstrating that the Hutton Property would be the subject of a hearing concerning a zoning amendment, aside from the

12

untimely December 2023 notice; (3) minutes from any public hearings prior to December 12, 2023, wherein zoning of the Hutton Property was discussed; or (4) any other evidence demonstrating that the planning commission approved any ordinance concerning zoning of the Hutton Property.

The Town and RPC rely on Tennessee Code Annotated § 13-7-212 as establishing the accuracy of the 2019 zoning map, maintained and displayed in the Greenback Community Center, because it is "supported" by the comprehensive zoning ordinance established in 1986 and available on the Town's website. We note, however, that the comprehensive ordinance upon which the Town relies contains no information regarding particular parcels of property or how they are purportedly zoned. The Town has been unable to demonstrate the existence of any zoning ordinance establishing zoning with respect to the Hutton Property that complies with the statutory requirements.

Tennessee Code Annotated § 13-7-212(a) expressly contemplates that a municipality will exercise its zoning powers "under this part," which refers to the statutory scheme concerning municipal zoning found in Title 13, Chapter 7, Part 2. Thus, for the municipality's compilation to be presumed true and correct, the legislative body must have enacted or amended zoning ordinances by strictly following the procedures set forth in Chapter 7, Title 13, Part 2. As previously stated, no ordinance or amendment was presented to demonstrate that the Town had exercised its zoning powers under Title 13, Chapter 7, Part 2 with respect to the Hutton Property.

Moreover, for the presumption of correctness to apply to municipal zoning ordinances made available to the public through a compilation, § 13-7-212(a) also provides that the compilation be "made pursuant to this section." The presence of both "part" and "section" in the same statute is significant. Whereas "under this part" refers to the whole of Title 13, Chapter 7, Part 2, "pursuant to this section" refers specifically to § 13-7-212. Therefore, the Town's legislative body must also "authenticate, compile, update, keep, maintain, and make available the zoning ordinance, map, and all amendments as a public record." Tenn. Code Ann. § 13-7-212(a) (emphasis added). As indicated by use of the word, "shall," in § 13-7-212, these provisions are mandatory. *Emory v. Memphis City Sch. Bd. of Educ.*, 514 S.W.3d 129, 144 n.11 (Tenn. 2017) ("In general, use of the word 'shall' in a statute indicates that the statutory provision is mandatory, not discretionary.")

The Town and RPC claim that various maps demonstrating a marking of "M-1" on the Hutton Property are sufficient to establish the presumption of accuracy with reference to that property's alleged zoning. However, without an ordinance or amendment establishing that zoning designation, the Town's records are simply incomplete regarding the Hutton Property. In addition to a map, the statute requires maintenance of the zoning ordinance and all amendments. *See* Tenn. Code Ann. § 13-7-212(a).

Inasmuch as the Town and RPC have been unable to demonstrate that the Town has complied with the statutory requirements that it "authenticate, compile, update, keep, maintain, and make available the zoning ordinance, map, and all amendments as a public record," *see* Tenn. Code Ann. § 13-7-212(a), the presumption of accuracy found in that statutory section cannot attach.

In addition to the Town's and RPC's reliance on § 13-7-212, they also rely on other doctrines that they claim establish the accuracy of the alleged zoning designation of the Hutton Property. We will address each of these arguments in turn.

## VI. Ordinance No. 72

The Town and RPC contend that Ordinance No. 72 supports the Hutton Property's zoning designation of M-1. Ordinance No. 72, enacted in 2007, rezoned what the Town and RPC refer to as the "Pope Property," which directly abuts the Hutton Property. It is undisputed that the map accompanying Ordinance No. 72 shows the Hutton Property as being zoned M-1. The Town and RPC contend that Ordinance No. 72's proper enactment cures any infirmities that may have existed in any prior zoning ordinance and conclusively proves that the Hutton Property has always been zoned M-1. We disagree.

In their brief, the Town and RPC aver that "[w]here a municipal entity takes subsequent action in recognition of the intent and validity of the original action that is in question, that subsequent action can cure any infirmity." However, the cases they rely on to support this argument as to Ordinance No. 72 are distinguishable from this case. For example, in *Soukup v. Sell*, 104 S.W.2d 830, 831-32 (Tenn. 1937), a legislative act was passed for the purpose of correcting an ordinance that was not enacted in accordance with applicable law. The subsequent act authorized the exact action that the original ordinance was meant to authorize. *Id.* at 832-33. The Tennessee Supreme Court held: "What could be done by initial legislation may be validated by an act or acts approving irregular municipal action or procedure." *Id.* at 832.

Similarly, in *Muse v. Lexington*, 76 S.W. 481, 484 (Tenn. 1903), the plaintiffs averred that due to statutory irregularities, the town of Lexington was not a properly incorporated town at the time it had issued certain bonds. The plaintiff taxpayers therefore sought to have the bonds declared void for illegality. *Id.* The defendant bondholders asserted that even if procedural irregularities with the incorporation existed, subsequent acts of the legislature that recognized Lexington as a municipal corporation cured those irregularities. *Id.* at 658. After its original incorporation in 1889, multiple legislative actions were undertaken that recognized Lexington as an existing municipality. *Id.* at 659-65. Our Supreme Court held that recognition of Lexington as a municipal body made valid the original charter, rendering the subsequently issued bonds lawful. *Id.* at 668.

14

Contrary to the postulate urged by the Town and RPC, these cases do not stand for the proposition that a municipality or its legislative body can rely on a subsequent action, such as operating as if an unlawful procedure did not occur, to cure an alleged act's irregularity. Here, Ordinance No. 72 did not purport to zone or rezone the Hutton Property, and it did not address any previous procedural irregularities with respect to the Hutton Property's alleged zoning. Moreover, the above-cited cases clarify that only acts that were authorized to have been taken by the municipality can be ratified by a subsequent act. However, the Town has never maintained the authority to implicitly zone a property, which is the extent of what Ordinance No. 72 could have accomplished with respect to the Hutton Property. We therefore find this argument unavailing.

## VII. Lost Originals and Other Evidence

The Town and RPC next argue that when an original document has been lost (implying that the original zoning ordinance or amendment zoning the Hutton Property as M-1 was lost or destroyed when the former mayor left office), the trial court may consider other evidence that supports the existence of that original document. In support, the Town and RPC rely upon this Court's Opinion in *Abbington Ctr., LLC v. Town of Collierville*, 393 S.W.3d 170, 172 (Tenn. Ct. App. 2012). However, we find the *Abbington* case inapposite.

In *Abbington*, the plaintiff had purchased two billboards in 1993 in the Town of Collierville. *See id.* The two billboards had been erected in 1979, prior to Collierville's prohibition of billboards. *Id.* Having received assurance from Collierville that the billboards were "grandfathered in," the plaintiff sought to remove and re-construct the billboards. *Id.* However, Collierville issued a "stop work" order after questioning whether the billboards were legal, non-conforming uses protected by the "grandfather clause" set forth in Tennessee Code Annotated § 13-7-208, and Collierville refused to issue the building permits necessary for reconstruction. *Id.* The plaintiff appealed to the Board of Zoning Appeals, which affirmed the Town's actions. *Id.*

The *Abbington* plaintiff then filed a writ of certiorari in the Shelby County Chancery Court, which ultimately found that the Board had acted illegally, arbitrarily, and capriciously. *Id.* The chancery court invalidated the stop work orders and declared that the plaintiff could re-construct the billboards. *Id.* However, on appeal, this Court concluded that the Board was justified in upholding Collierville's stop work orders and its denial of the requested building permits, determining that the Board's decision was not illegal, arbitrary, or capricious. *See id.* at 184. In so ruling, this Court stated:

> Primarily, the record before the BZA contained no credible proof that municipal building permits were ever obtained, such that the billboards were "legal" structures prior to the 1982 amendment. Witnesses merely

15

"guess[ed]" that such permits had been procured based upon the structures' existence, rather than upon any actual knowledge of permit compliance.

*Id.*

Similarly, here, the Town and RPC have provided no evidence conclusively establishing the existence of a zoning ordinance or amendment affecting the Hutton Property. Although they presented proof via deposition testimony from Mayor Birchfield and another witness who stated that the Hutton Property had previously been zoned M-1, no documentary evidence establishing this as fact was introduced. We therefore find the Town's and RPC's reliance on *Abbington* to be misplaced.

## VIII. Public Reliance

The Town and RPC have also invoked the public reliance doctrine, which stands for the principle that once a zoning ordinance has been in effect for a sufficient amount of time to generate substantial public reliance, that ordinance is not subject to procedural attack. *See, e.g.*, *Hutcherson v. Criner*, 11 S.W.3d 126, 134 (Tenn. Ct. App. 1999). This argument is also unavailing inasmuch as the Town and RPC have not produced any ordinance concerning the Hutton Property upon which the public could have relied.

Both cases cited by the Town and RPC in support of this argument involved ordinances that had been enacted but were procedurally defective in some way. *See Metro. Gov't of Nashville & Davidson Cnty. v. Hudson*, 148 S.W.3d 907, 911 (Tenn. Ct. App. 2003) (finding that a zoning ordinance that had been in effect for fifteen years was immune from procedural attack despite the lack of proper statutory notice); *Hutcherson*, 11 S.W.3d at 134-35 (finding that a zoning ordinance that had been in effect for over ten years was immune from attack on procedural grounds despite the lack of proper statutory notice). Here, there is no ordinance upon which the public could rely, improperly enacted or otherwise.

The Town and RPC urge this Court to find that the public relied on the series of maps and zoning ordinance amendments that they have provided. We reiterate, however, that the maps provided by the Town, which purportedly establish the Hutton Property as having been zoned M-1, have no basis in any ordinances or amendments actually zoning the Hutton Property. Instead, as the trial court correctly observed, a "citizen/landowner/potential landowner would not be able to ascertain [how their property was zoned] from what was on file with the City of Greenback." We therefore reject the Town's and RPC's dependance on the public reliance doctrine as establishing zoning of the Hutton Property.

16

IX.  Validity of Ordinance No. 23-5

We emphasize that the Town and RPC do not specifically urge on appeal that Ordinance No. 23-5 was properly enacted pursuant to Tennessee Code Annotated § 13-7-203.  However, they do argue that Ordinance No. 23-5 constituted an exercise of the Town's general police power such that its enactment need not have been in compliance with Tennessee Code Annotated § 13-7-203.

The Town and RPC contend that because Ordinance No. 23-5 "merely confirmed and ratified existing zoning on the Hutton Property," it did not have to comply with the statutes governing passage of zoning ordinances.   In support, the Town and RPC rely on *SNPCO, Inc. v. City of Jefferson City*, 363 S.W.3d 467, 470 (Tenn. 2012) and *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466, 472-73 (Tenn. 2004).  In general terms, these cases highlight the distinction between zoning ordinances or amendments versus other regulations that simply reflect an exercise of the municipality's general police power.

The most obvious fallacy with the position advanced by the Town and RPC regarding Ordinance No. 23-5 is the lack of an original or existing ordinance that could be "confirmed and ratified."  Although the Town and RPC urge that Ordinance No. 23-5 only ratified the existing zoning designation affecting the Hutton Property and did not change that zoning scheme, this proposition fails in light of their inability to prove that the Hutton Property was subject to an existing zoning designation.  For all of the reasons stated above, the Town and RPC never provided any ordinance or amendment that zoned the Hutton Property and complied with the statutory requirements.  Accordingly, we agree with the trial court's determination that the Hutton Property was unzoned.

X.  Conclusion

For the foregoing reasons, we affirm the trial court's judgment.  We also find that Quarry Defendants' motions to consider post-judgment facts and to dismiss the appeal are not well taken, and we deny those motions.  Costs on appeal are assessed to the appellants, the Town of Greenback, Tennessee, and the Regional Planning Commission of Loudon County, Tennessee.  This case is remanded to the trial court for enforcement of the trial court's judgment and collection of costs assessed below.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE

17